UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMAPROP LIMITED,

                    Petitioner,

        - against -

INDIABULLS FINANCIAL SERVICES
LIMITED and INDIABULLS FINANCE
COMPANY PRIVATE LIMITED,

                  Respondents.

10 Civ. 1853 (PGG)

**MEMORANDUM OPINION**

PAUL G. GARDEPHE, U.S.D.J.:

        Before this Court is (1) Amaprop Limited's petition to compel arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 9 U.S.C. §§ 201-208, 21 U.S.T. 2517, and (2) Amaprop's motion for a preliminary injunction compelling Respondents Indiabulls Financial Services ("Indiabulls") and Indiabulls Finance Company Private Limited (the "Finance Company") to dismiss or cause to be dismissed actions currently pending in India related to this matter, and enjoining Indiabulls and the Finance Company from bringing any further legal action in India or any other jurisdiction concerning the parties' current dispute.

        On March 11, 2010, this Court ordered Respondents to show cause on March 17, 2010, why an order should not be entered that, inter alia, compelled them to arbitrate their dispute with Amaprop, enjoined them from further prosecuting any actions

1

in India concerning the Share Subscription and Shareholders Agreement, and enjoined them from commencing any other action related to this dispute in any jurisdiction. [Docket No. 3]  This Court also entered a temporary restraining order enjoining Respondents from further prosecuting actions pending in India and commencing any other action related to this dispute pending the outcome of the March 17, 2010 hearing.

For the reasons stated below, Amaprop's petition to compel arbitration and motion for an anti-suit injunction will be GRANTED.

## BACKGROUND

Amaprop is organized under the laws of the Cayman Islands, while Indiabulls and its subsidiary, the Finance Company, are incorporated under the laws of India.  (Cmplt. ¶¶ 5-7)

On May 31, 2005, Amaranth LLC entered into a "Share Subscription and Shareholders Agreement" ("the Agreement") (Matano Decl., Ex. A) with Indiabulls and the Finance Company.  Under the Agreement, Amaranth purchased a 42.5% interest in the Finance Company, whose "core business" is providing financing for initial public offerings ("IPO") in India.  (Id., Ex. A at 5)  The Agreement contemplated an eventual IPO by the Finance Company itself, and granted certain buy back rights to Amaranth in the event that an IPO for the Finance Company was not consummated within 55 months of the transaction closing date – i.e., by January 1, 2010 (the "Put Right").  (Id., Ex. A at 27)

On June 6, 2005, the Agreement was amended "so as to replace Amaranth with Amaprop as a party," and "[a]ll of Amaranth's rights and obligations under the . . . Agreement . . . [were] vest[ed] with Amaprop."  (Matano Decl., Ex. B at 4)

2

The Agreement contains the following clauses related to arbitration:

Section 12.11 <u>Arbitration</u>.

(a) <u>Arbitration</u>.  Any action arising relating to this Agreement or the other Transaction Documents shall be settled by arbitration in the State of New York in accordance with the rules of the American Arbitration Association, *provided however,* that a party, without prejudice to these procedures may seek a preliminary injunction or order provisional relief if, in its judgment, such action is deemed necessary to avoid irreparable damages or preserve the status quo.

*            *            *            *

(c) <u>Binding Character</u>.  Any decision rendered by the arbitrator pursuant to this <u>Section 12.11</u> shall be final and binding on the parties thereto, and judgment thereon may be entered by any state or federal court of competent jurisdiction.

(Matano Decl., Ex. A, Section 12.11)

Amaprop alleges that no qualified IPO for the Finance Company had been consummated by January 2, 2010.  Accordingly, Amaprop notified Indiabulls that it wished to exercise its Put Right.  Amaprop further alleges that Indiabulls repeatedly stated that it had no intention of honoring Amaprop's Put Right under the Agreement. (Cmplt. ¶ 13; Matano Decl. ¶¶ 16-18)  On January 19, 2010, Amaprop's agent, Amaranth, delivered a written notice to Indiabulls and to the Finance Company exercising Amaprop's Put Right under the Agreement.[1]  (Cmplt. ¶ 14; Matano Decl., Ex. F)  That same day, Amaprop filed a Notice of Arbitration and Statement of Claim with the International Centre for Dispute Resolution of the American Arbitration Association (the "ICDR").  (Matano Decl., Ex. G)  Amaprop alleges that it commenced the arbitration on the same day that it exercised its Put Right because of "Indiabulls's repeated

---

[1]  Respondents argue that this notice was defective because it was delivered by Amaranth rather than by Amaprop.  This Court's task, however, is limited to determining whether the parties agreed to submit to arbitration any disputes arising under the Agreement.  If so, the question of notice will be resolved by the arbitrator.

statements that it had no intention of honoring Amaprop's Put Right."[2]  (Cmplt. ¶ 16)

Amaprop's Statement of Claim sought, <u>inter alia</u>, (1) a declaration that Indiabulls had anticipatorily breached the Agreement; (2) an order requiring Indiabulls and the Finance Company to consummate the Put Purchase; and (3) an injunction preventing Indiabulls and the Finance Company from initiating judicial proceedings in India related to the Agreement.  (Cmplt. ¶ 17; Matano Decl., Ex. G)

In letters to the ICDR dated February 11, 2010, Respondents made their initial appearances in the arbitration proceeding and denied that they had breached the Agreement.  (Matano Decl., Exs. L, M)  On February 24, 2010, Respondents made a submission seeking an additional four weeks in which to file their Statement of Defense. Indiabulls stated in its submission to the ICDR, however, that it would proceed with appointing an arbitrator.  (Matano Decl. Exs. O, P, Q)  Amaprop then sought leave to file an amended Statement of Claim by March 5, 2010.[3]  The ICDR granted Amaprop's request and ordered Respondents to submit Statements of Defense by April 5, 2010. (Matano Decl. Ex. S)

On March 4, 2010, however, the Finance Company sought and obtained an <u>ex parte</u> injunction from the High Court of Judicature at Bombay enjoining Amaprop from proceeding with the arbitration.  (Matano Decl., Ex. U)  Indiabulls likewise filed

---

[2]  Respondents contend that Amaprop acted in bad faith in filing its Notice of Arbitration on the same day that it exercised its Put Right.  (Resp. Br. 1)  A declaration from Amaprop's representative, however, alleges that senior executives of Indiabulls and the Finance Company had informed Amaprop employees on multiple occasions that if Amaprop attempted to exercise its Put Right, Indiabulls would refuse to honor that exercise.  (Matano Decl. ¶¶ 16-18)  Respondents have submitted no contrary declaration.

[3]  Amaprop sought to amend its Statement of Claim in order to add a claim for money damages arising from Respondents' failure to consummate the Put Purchase.  (Cmplt. ¶¶ 18, 20)

4

suit against Amaprop in India, and obtained an <u>ex parte</u> order from the same court

enjoining Amaprop from proceeding with the arbitration.[4]  (Matano Decl., Ex. V)

Amaprop alleges that it was never given notice of Respondents' applications to the Indian

court,[5] and further alleges that Respondents refused to provide the underlying papers in

these actions to Amaprop even after the <u>ex parte</u> orders were issued.  (Cmplt. ¶¶ 22-23;

Pet. Br. 6)

           On March 9, 2010, Amaprop filed this action seeking an order compelling

arbitration and an anti-suit injunction. [Docket No. 1]  Indiabulls and the Finance

---

[4]  At the March 17, 2010 hearing, Respondents' counsel stated that his "clients did not
seek to avoid the arbitration" and disputed whether the orders issued by the Indian court
in fact enjoined Amaprop from continuing with the New York arbitration.  (March 17,
2010 Tr. 10-11)  A comparison of the Indian court's orders (Matano Decl., Exs. U, V)
with Respondents' notice of motion and prayer for relief in the Indian actions (March 17,
2010 Tr., Ex. 1, and Tr. 11-12) makes clear that those orders do in fact enjoin Amaprop
from proceeding with the New York arbitration.

The Indian court's orders grant Respondents the relief they seek in "prayer(a)" of their
notice of motion.  Matano Decl., Ex. U at ¶ 6, Ex. V at ¶ 8.  "Prayer(a)" reads as follows:

> Pending the hearing and final disposal of the present Suit, the Defendants
> by themselves, their agents, employees, and all others acting or purporting
> to act on their behalf be restrained by an order of temporary injunction
> from proceeding further with the arbitration No. 50 181 T 00044 10
> bearing title Amaprop Limited versus Indiabulls Financial Services
> Limited (India) and Indiabulls Finance Company Private Limited (India)
> initiated in pursuance of the purported Notice of Arbitration dated 19th,
> January, 2010 before the International Centre for Dispute Resolution,
> 1633 Broadway, 10th Floor, New York, NY 10019. . . .

(March 17, 2010 Tr., Ex. 1, and Tr. 11-12).  Accordingly, it is clear that the <u>ex parte</u>
orders issued by the Indian courts enjoin Amaprop from proceeding further with the
ICDR arbitration.

[5]  During the March 17, 2010 hearing, the Court asked Respondents' counsel whether he
could provide "any explanation" as to why his clients chose to proceed <u>ex parte</u> in India
after appearing in the New York arbitration.  Counsel was unable to provide any such
explanation.  (March 17, 2001 Tr. 16)

Company responded to this Court's order to show cause on March 17, 2010 [Docket No. 8] and appeared at the March 17, 2010 hearing.

## DISCUSSION

The parties entered into a broad arbitration clause in the Agreement that clearly encompasses their current dispute.  Accordingly, an order compelling arbitration is appropriate.

It is also apparent that Amaprop is entitled to an injunction compelling Respondents to terminate their Indian actions and barring them from commencing any new actions designed to interfere with the New York arbitration.  While an injunction restraining a party from engaging in foreign litigation should only be granted with great caution, all of the requirements necessary to grant such an injunction are present here.

## I.      AN ORDER COMPELLING ARBITRATION WILL BE ISSUED

Under the Federal Arbitration Act, 9 U.S.C., § 4,

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.  If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue.

9 U.S.C. § 4.

In deciding whether to issue an order compelling arbitration, the role of the Court is limited to determining:  "(i) whether a valid agreement or obligation to arbitrate exists, and (ii) whether one party to the agreement has failed, neglected, or

6

refused to arbitrate." Jacobs v. USA Track & Field, 374 F.3d 85, 88 (2d Cir. 2004).

"In considering whether a particular dispute is arbitrable, a court must first decide whether the parties agreed to arbitrate." Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 95 (2d Cir. 1999).  Here, the Agreement states that the parties shall arbitrate any dispute "arising relating to this Agreement or the other Transaction Documents."  (Matano Decl., Ex. A at Section 12.11(a))  The question of whether Respondents failed to honor Amaprop's Put Right arises from and relates to the Agreement.  Accordingly, the current dispute falls within the Agreement's arbitration clause.  Respondents do not argue otherwise.

It is equally clear that Respondents have refused to arbitrate.  While Respondents argue that their appearance in the New York arbitration demonstrates that they have not refused to arbitrate (Resp. Br. 10), this argument is both disingenuous and frivolous.  Respondents obtained ex parte court orders enjoining Amaprop from proceeding with the arbitration that the parties had agreed to.  Under these circumstances, Respondents will be held to have refused to arbitrate.

Respondents also argue that the following language in the Agreement permits them to obtain an injunction barring the arbitration from proceeding:

> Any action arising relating to this Agreement or the other Transaction Documents shall be settled by arbitration in the State of New York in accordance with the rules of the American Arbitration Association, *provided however*, that a party . . . may seek a preliminary injunction or order provisional relief if, in its judgment, such action is deemed necessary to avoid irreparable damages or to preserve status quo.

(Resp. Br. 5 quoting Matano Decl., Ex. A at Section 12.11(a))

In making this argument and in quoting the Agreement, however, Respondents have left out the five critical words of Section 12.11(a) which negate their

7

argument:  "without prejudice to these procedures."  The applicable paragraph in full

reads:

> Any action arising relating to this Agreement or the other Transaction Documents shall be settled by arbitration in the State of New York in accordance with the rules of the American Arbitration Association, *provided however*, that a party, <u>without prejudice to these procedures</u> may seek a preliminary injunction or order provisional relief if, in its judgment, such action is deemed necessary to avoid irreparable damages or to preserve status quo.

(Matano Decl., Ex. A at Section 12.11(a)) (emphasis added).

Once the language misleadingly redacted by Respondents is replaced in

Section 12.11(a), it is apparent that while a party make seek a preliminary injunction or

other provisional relief, it may do so only "without prejudice to the[] [arbitration]

proceedings."  Section 12.11(a) does not permit Respondents to obtain an injunction – as

they did here – barring Amaprop from proceeding with an arbitration, because such an

act renders impotent the parties' agreement to arbitrate their disputes arising under the

Agreement.

Where "an arbitration agreement exists and . . . a party to such agreement

is not in compliance with it, the Court is required to issue an order compelling arbitration

without any further proceedings."  <u>Evans & Sutherland Computer Corp. v. Thomson</u>

<u>Training & Simulation Ltd.</u>, No. 94 Civ. 6795 (JFK), 1994 U.S. Dist. LEXIS 15496, at *9

(S.D.N.Y. Oct. 28, 1994).  Respondents are not in compliance with the arbitration

provision of the Agreement.  Accordingly, this Court will issue an order compelling

Respondents to arbitrate their dispute with Amaprop.[6]

---

[6]  Respondents argue that they "were under a legal requirement to obtain the permission of the [Reserve Bank of India]" before they could perform their buy back obligations under the Agreement, and that they were thus "forced to seek an order from the Indian

## II.       AN ANTI-SUIT INJUNCTION WILL BE ISSUED

"The power of federal courts to enjoin foreign suits by persons subject to their jurisdiction is well-established."[7]  China Trade & Dev. Corp. v. M.V. Choong Yong, 837 F.2d 33, 35 (2d Cir. 1987) (citing United States v. Davis, 767 F.2d 1025, 1038 (2d Cir. 1985)).  The power of federal courts to enjoin foreign litigation in favor of arbitration is likewise well-established.  See Suchodolski Assoc. v. Cardell Fin. Corp., No. 03 Civ. 4148 (WHP), 2006 WL 332765 (S.D.N.Y. Nov. 16, 2006) ("courts have enjoined foreign litigation in favor of parallel arbitration" (citing Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, 198 F.3d 88, 99 (2d Cir. 1999); Smoothline Ltd. v. N. Am. Foreign Trading Corp., No. 00 Civ. 2798 (DLC), 2002 WL 273301, at *6 (S.D.N.Y. Feb. 27, 2002))). "[P]rinciples of comity counsel, [however], that injunctions restraining foreign litigation be 'used sparingly' and 'granted only with care and great restraint.'"  Paramedics Electromedicina Comercial, Ltda. v. GE

---

Court enjoining the Arbitration while [they] sought the requisite permission to effectuate the said purchase."  (Resp. Br. at 11)  In the Agreement, however, the parties recite that "no consent, approval, license, permit, order or authorization of, or registration, declaration or filing, or notice . . . [to] any Governmental Entity or any other Person is required to be obtained or made by or with respect to the Company or any subsidiary or their respective affiliates in connection with the execution, delivery, and performance of this Agreement. . . ." (Matano Decl., Ex. A, Section 3.4)  In any event, this is an argument for the arbitrator, and not this Court.

[7]  Because the parties agreed to arbitrate their disputes in New York, they are subject to this Court's jurisdiction.  See Kahn Lucas Lancaster, Inc. v. Lark Intern Ltd., 956 F. Supp. 1131, 1139 (S.D.N.Y. 1997) ("[W]hen a party agrees to arbitrate a dispute in New York, such agreement is deemed consent to the jurisdiction of the courts for purposes relating to enforcing the arbitration agreement.") (citing Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos, 553 F.2d 842, 844 (2d Cir. 1977)).  Under 9 U.S.C. § 206, this Court is authorized to enter a preliminary injunction in aid of arbitration.  See Borden, Inc. v. Meiji Milk Prods. Co., 919 F.2d 822, 826 (2d Cir. 1990) ("We hold that entertaining an application for a preliminary injunction in aid of arbitration is consistent with the court's power pursuant to § 206.").

Med. Sys. Info. Techs., Inc., 369 F.3d 645, 653 (2d Cir. 2004) (quoting China Trade, 837

F.2d at 36).

### A.  Threshold Requirements

"An anti-suit injunction against parallel litigation may be imposed only if:

(A) the parties are the same in both matters, and (B) resolution of the case before the

enjoining court is dispositive of the action to be enjoined."  Paramedics, 369 F. 3d at 652.

(citing China Trade, 837 F.2d at 35).

Here, the parties in this action are the same parties named in the Indian

actions.  It is likewise clear that an injunction from this Court would be dispositive of the

actions brought in India.  See Ibeto Petrochemical Indus. v. M/T Beffen, 475 F.3d 56, 64

(2d Cir. 2007) ("[R]esolution by arbitration of the case before the District Court is

dispositive of the foreign proceedings."); Storm LLC v. Telenor Mobile Communs. AS,

No. 06 Civ. 13157 (GEL), 2006 U.S. Dist. LEXIS 90978, at *19 (S.D.N.Y. Dec. 15,

2006) ("[T]he district court's judgment disposes of the foreign action by determining the

arbitrability of the issues.")

The Second Circuit explained in Paramedics why this is so:

> The case before the enjoining court here concerns the arbitrability of the
> parties' claims; therefore the question . . . is whether the ruling on
> arbitrability is dispositive of the Porte Alegre litigation, even though the
> underlying disputes are confided to the arbitral panel and will not be
> decided by the enjoining court.  In short, the district court's judgment
> disposes of the Porte Alegre action because the Porte Alegre litigation
> concerns issues that, by virtue of the district court's judgment, are
> reserved for arbitration.

Paramedics, 369 F.3d at 653.  The same logic applies here.

### B.  Factors Bearing on Injunctive Relief

Where, as here, the threshold requirements for enjoining foreign litigation

are satisfied, a court must go on to consider "five factors . . . in determining whether the foregoing action should be enjoined:  (1) frustration of a policy in the enjoining forum; (2) [whether] the foreign action would be vexatious; (3) [whether the foreign proceedings present] a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) [whether] the proceedings in the other forum prejudice other equitable considerations; or (5) [whether] adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.'"  China Trade, 837 F.2d at 35 (quoting American Home Assurance Corp. v. The Insurance Corp. of Ireland, Ltd., 603 F. Supp. 636, 643 (S.D.N.Y. 1984)); see also Storm, 2006 U.S. Dist. LEXIS 90978, at *22-23 (citing Ibeto Petrochemical Indus. v. M/T Beffen, 412 F. Supp. 2d 285, 290 (S.D.N.Y. 2005)).  Consideration of these factors here weighs in favor of issuing an injunction.

### 1.    Frustration of a Policy in the Enjoining Forum

It is this nation's policy to strongly favor enforcement of arbitration agreements.  See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 638-40 (1985); Arciniaga v. General Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." (citation and internal quotation marks omitted)).  This policy "applies with particular force in international disputes." Paramedics, 369 F.3d at 654 (citing Mitsubishi Motors Corp.,473 U.S. at 638-40).

In Storm, the court noted that "[t]o the extent that the litigation in Ukraine threatens to disrupt the arbitration process, it would have the effect of frustrating [U.S.] policy."  Storm,  2006 U.S. Dist. LEXIS 90978, at *23.  Here, the ex parte orders issued

by the Indian courts have derailed the arbitration proceedings the parties agreed to in the

Agreement and frustrated U.S. policy favoring enforcement of arbitration agreements.

### 2.     Vexatiousness

The court in Storm noted that "[a]ttempts to interfere with arbitration of

international disputes are so powerfully disapproved that the Second Circuit has

suggested, albeit not decided, that 'an attempt to sidestep arbitration' might be 'sufficient

to support a foreign anti-suit injunction.'"  Storm, 2006 U.S. Dist. LEXIS 90978, at *26

(quoting Paramedics, 369 F.3d at 654).  In Storm, the court issued an anti-suit injunction

after a Ukrainian court had issued a decision barring further arbitration between the

parties.  See id. at *9-10, 26.

When a foreign court has issued an order prohibiting the arbitration

proceedings that parties have agreed to, the Storm court noted that "little else is required

to authorize an injunction."  In that case, however, the court commented that "there is

much else":

> The foreign litigation here has been conducted in the most vexatious way
> possible.  Telenor has found its interests undermined by litigation to which
> it has not been made a party, and of which it has not even received notice
> until after orders have been entered.  The Ukrainian orders have been used
> against Telenor in court and before the arbitrators here in New York, and
> have exposed it to potential criminal liability in Ukraine.

Storm, 2006 U.S. Dist. LEXIS 90978, at *26.

The circumstances here are similar.  Respondents have proceeded in the

utmost bad faith.  After signing an agreement in which the parties promised that all

disputes would be resolved through arbitration, and after disputes indisputably covered

by the arbitration clause of the Agreement arose, Amaprop pursued its arbitration

remedy.  Respondents appeared in that action, promised to cooperate in the appointment

of an arbitrator, and sought – and were granted – additional time to file a statement of

defense.  A little more than one week after obtaining an extension of time from the ICDR,

however, Respondents applied on an <u>ex parte</u> basis to an Indian court for an injunction

barring the arbitration proceedings they had just appeared in from going forward.  As in

<u>Storm</u>, Respondents gave Amaprop no notice of their decision to seek injunctive relief in

India, and after obtaining the injunctions have refused to even supply Amaprop with the

underlying papers.  Moreover, as Respondent's counsel made clear at the March 17, 2010

hearing, Amaprop now faces contempt sanctions in India if it proceeds with the New

York arbitration.  (March 17, 2010 Tr. 17)

      After Amaprop sued here to enforce the parties' agreement to arbitrate,

Respondents submitted a brief in which they argued – based on a misleading redaction of

the Agreement's arbitration clause – that Respondents' decision to obtain an injunction in

India barring the New York arbitration from proceeding was entirely consistent with their

obligations under the Agreement.  At the March 17, 2010 preliminary injunction hearing,

Respondents argued that they "did not seek to avoid the arbitration" even though they had

obtained injunctions barring the arbitration from proceeding.  In short, Respondents have

acted in bad faith throughout and in a manner calculated to cause vexation to Amaprop.

      **C.**      <u>**Delay, Inconvenience, Expense, and Risk of Inconsistent Judgments**</u>

      There is overwhelming evidence here that the pending litigation in India

will cause Amaprop delay, inconvenience, and expense, and that it presents a risk of

inconsistent judgments.

      With respect to delay, Amaprop has offered a declaration from retired

Justice S.K. Desai – who formerly served as Acting Chief Justice of the High Court of

Judicature at Bombay – the same court from which Respondents obtained injunctions

barring the New York arbitration.  (March 17, 2010 hearing, Ex. 2)  Although Justice

Desai's declaration was originally filed in a different case – Thomas Weisel Partners

LLC v. BNP Paribas, 07 Civ. 6198 (MHP), 2008 U.S. Dist. LEXIS 65936 (N.D. Cal.

Aug. 25, 2008) – it is highly revealing about the risk of delay posed by the Indian actions.

       In relying on Justice Desai's declaration in the Thomas Weisel Partners

matter, the court noted that

> the average caseload per judge [in that court] exceeds 6,000. . . . As a
> result . . . more than 41% of the civil cases pending in the Bombay High
> Court are more than 10 years old. . . . A civil case typically takes at least
> 15 years to reach original resolution and, due to appeals, an additional 5 to
> 10 years to reach final resolution on appeal. . . .Given the growing
> caseload in the Bombay High Court, Desai estimates that resolution of this
> action from the Mumbai Bench would likely take longer than 15 to 20
> years, not including additional years spent on appeal.

Thomas Weisel Partners LLC, 2008 U.S. Dist. LEXIS 65936, at *26-27.  The Weisel

court also noted that the problem had only grown worse since Justice Desai's time on the

bench.  See id. at *29 ("Plaintiffs have cited statistics from September 2007 that show the

total number of cases pending in the Bombay High Court has increased.")

       It is equally apparent that the Indian actions have caused inconvenience

and expense to Amaprop, and are likely to cause additional inconvenience and expense if

an injunction against Respondents is not issued.  In Storm, the court explained that

continued litigation in the foreign jurisdiction would create delay and expense because of

the necessity "to litigate in both American and Ukrainian courts not merely to enforce an

arbitration agreement but to defend the existence of an arbitration already under way."

Storm, 2006 U.S. Dist. LEXIS 90978, at *28.  Here, the same is true.  Because of the

Indian court's orders enjoining arbitration, Amaprop has been forced to expend

considerable resources in briefing the issues currently before this Court.  Those costs and

that inconvenience will only increase if Amaprop is required to appear in the Indian

proceedings in order to attempt to persuade the Indian court that the arbitration clause the

parties agreed to should be honored.  Parties enter into binding arbitration clauses –

particularly in the international setting – precisely in order to avoid such costs and

inconvenience.  See Storm, 2006 U.S. Dist. LEXIS 90978, at *27-28 ("Arbitration is

intended to be an expeditious and efficient means of resolving commercial disputes.").

       The existence of the Indian actions also presents a risk of inconsistent

judgments – as demonstrated by the Indian court's treatment of the parties' arbitration

agreement – and a threat of a race to judgment.  See Ibeto, 412 F. Supp.2d at 293 ("[I]t is

likely that adjudication of the same issues in two separate actions would result in

inconvenience, inconsistency, and a possible race to judgment.").  With respect to a race

to judgment, the Respondents here are similarly situated to the parties in Storm who

obtained from a Ukrainian court an ex parte injunction barring the arbitration the parties

had agreed to.  See Storm, 2006 U.S. Dist. LEXIS 90978, at *9-10.  In Storm, Judge

Lynch noted that the parties who had resorted to the Ukrainian court were "seek[ing] to

coopt the process by resorting to a forum in which their home-court advantage is

magnified by their willingness to play the game without letting the other team show up."

Storm, 2006 U.S. Dist. LEXIS 90978, at *29.  Those remarks apply with equal force

here.

    **D.**    **Case Law Supports the Issuance of an Injunction Here**

       Courts in this Circuit have granted anti-suit injunctions where, as here,

analysis of the China Trade factors favors issuance of such an injunction.  For example,

15

in Ibeto, the Second Circuit upheld the district court's issuance of an anti-suit injunction,

citing many of the factors present here:

> the District Court found that the general federal policy favoring arbitration
> might be frustrated by the Nigerian litigation; widely disparate results
> might obtain because the Nigerian Courts would not apply the provisions
> of [the Carriage of Goods by Sea Act]; a race to judgment could be
> provoked by the disparity; equitable considerations such as deterring
> forum shopping favor the injunction; and "it is likely that adjudication of
> the same issues in two separate actions would result in  inconvenience,
> inconsistency, and a possible race to judgment." Ibeto, 412 F. Supp. 2d at
> 293. . . . We agree with the foregoing analysis of the District Court in
> applying the China Trade factors and add our observation that the policy
> favoring arbitration is a strong one in the federal courts.  See Paramedics,
> 369 F.3d at 654. Accordingly, the injunction is fully justified in this case.

Ibeto, 475 F.3d at 65.

Similarly, in Suchodolksi Assoc., Inc. v. Cardell Fin. Corp., the court

issued an anti-suit injunction, noting that the petitioner would be "harmed if a preliminary

injunction is not entered because it will be forced to litigate the . . . claim simultaneously

in New York and Brazil" when it had bargained for an arbitration in New York.

Suchodolski, 2006 WL 3327625, at *2.

Likewise in Storm, the court – after concluding that the China Trade

factors strongly favored the party seeking anti-suit relief – issued an injunction enjoining

the petitioners, who had commenced an action in Ukraine, "from bringing or attempting

to cause the enforcement of any legal action in the Ukraine that would disrupt, delay or

hinder in any way the arbitration proceedings [between the parties] in New York."

Storm, 2006 U.S.Dist. LEXIS 90978, at *43.

Here, as discussed above, the China Trade factors weigh heavily in favor

of an injunction, and the circumstances discussed in Ibeto are just as strongly present:

Respondents' actions threaten United States policy in favor of arbitration; there is the

16

possibility of inconsistent judgments if this action is permitted to continue in parallel

jurisdictions; Respondents have engaged in forum-shopping despite their agreement to

arbitrate all disputes in New York; and if the Respondents are not enjoined from pursuing

the Indian actions there is a great risk of delay, inconvenience, and additional expense.

The Second Circuit has stated that "an anti-suit injunction may be proper

where a party initiates foreign proceedings in an attempt to sidestep arbitration."  LAIF X

SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 199 (2d Cir. 2004).  This is just such a case,

and issuance of an anti-suit injunction is appropriate.

**III.    Scope of the Anti-Suit Injunction**

Any anti-suit injunction must be properly limited, in recognition of the

fact that although it is "leveled against the party bringing the suit, it nonetheless

'effectively restricts the jurisdiction of the court of a foreign sovereign.'"  Paramedics,

369 F.3d at 655 quoting China Trade, 837 F.2d at 35.  The Second Circuit has further

directed district courts to give "due regard for principles of international comity" and to

exercise a "delicate touch in the issuance of anti-foreign suit injunctions."  Ibeto, 475

F.3d at 65.

Anti-suit injunctions should be of a preliminary nature because, as the

Second Circuit explained in Ibeto, "there is no need for [a] permanent injunction. . . . The

parties need to be enjoined from proceeding in the courts of [a foreign jurisdiction] only

until the conclusion of the . . . arbitration and the consequent resolution of the still-

pending case in the District Court."  Ibeto, 475 F.3d at 65.

Anti-suit injunctions should be issued only against the offending parties –

here Respondents and their officers, agents, servants, employees, and attorneys, and all

17

other persons who are in active concert or participation with Respondents.  See id. at 65

("The injunction should be directed specifically to the parties, for it is only the parties

before a federal court who may be enjoined from prosecuting a suit in a foreign

country.").

The injunction must also specify what activities are enjoined.  Here,

Respondents will be enjoined from commencing or prosecuting any action in India

concerning the Agreement.  This form of relief is typical in a foreign anti-suit injunction

and has been granted by numerous courts.  See, e.g., Storm, 2006 U.S. Dist. LEXIS

90978, at *9-10 ("Storm, Altimo and Alpren are enjoined from bringing or attempting to

cause the enforcement of any legal action in the Ukraine that would disrupt, delay or

hinder in any way the arbitration proceedings between Telenor and Storm in New

York.").  While Amaprop seeks an injunction that bars suit in any other jurisdiction

worldwide, it has cited no law in support of such a broad anti-suit injunction.  In the

event that Respondents file suit in another jurisdiction, Amaprop may seek relief from

this Court at that time.

The injunction will also require Respondents to take all steps necessary,

forthwith, to cause the pending Indian actions to be dismissed.  This form of relief is

appropriate under the circumstances, and has been granted in other cases where pending

foreign litigation threatens, hinders, or delays arbitration proceedings here.  See

Paramedics, 369 F.3d at 650 (affirming lower court's anti-suit injunction where court had

ordered defendant to "immediately take all steps necessary to cause dismissal of the

[foreign] action"); Suchodolski, 2006 WL 3327625, at *4 ("Plaintiffs, their officers,

directors, employees and agents, and all persons acting under their direction and control,

18

Respondents' actions fall short of a full withdrawal or discontinuance of the two pending Indian lawsuits, they will not be in compliance with the Court's order accompanying this opinion and will be subject to contempt sanctions. See Suchodolski, 2006 WL 3327625, at *4 ("[A]nything short of full withdrawal and discontinuance – for example, a stay or partial discontinuance – will constitute non-compliance with this Order, and Plaintiffs will be sanctioned accordingly.").

## CONCLUSION

For the foregoing reasons, Amaprop's petition to compel arbitration and motion for a preliminary anti-suit injunction will be GRANTED. As set forth in the Order accompanying this opinion, Respondents are to appear before the ICDR in New York to arbitrate their dispute with Amaprop; are enjoined from prosecuting the actions they filed against Amaprop in India; are instructed to dismiss or cause to be dismissed any actions currently pending in India arising from the Agreement; and are enjoined from commencing any new legal actions in India arising from the Agreement.

Dated: New York, New York
       March 23, 2010

SO ORDERED.

Paul G. Gardephe
United States District Judge

19