UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMAPROP LIMITED,

         Petitioner,     10 Civ. 1853 (PGG)

  - against -        **MEMORANDUM OPINION
                          & ORDER**

INDIABULLS FINANCIAL SERVICES
LIMITED and INDIABULLS FINANCE
COMPANY PRIVATE LIMITED,

         Respondents.

PAUL G. GARDEPHE, U.S.D.J.:

    Before this Court is Petitioner Amaprop Limited's motion for an award of attorneys' fees and non-taxable costs against Respondent Indiabulls Financial Services Limited ("Indiabulls").[1]  Previously, this Court:  (1) granted Amaprop's petition to compel arbitration; (2) enjoined Respondents from prosecuting certain actions they filed against Amaprop in India; (3) instructed Respondents to dismiss or cause to be dismissed any actions currently pending in India arising from a "Share Subscription and Shareholders Agreement" between Amaprop's predecessor and Respondents (the "Agreement"); and (4) enjoined Respondents from commencing any new legal actions in India arising from the Agreement.  Amaprop Ltd. v. Indiabulls Financial Services Ltd., No. 10 Civ. 1853(PGG), 2010 WL 1050988, at *10 (S.D.N.Y. Mar. 23, 2010) (Docket No. 20).

    For the reasons stated below, Amaprop's motion for attorneys' fees and costs will be granted.

---

[1] Amaprop does not seek an attorneys' fee award against Respondent Indiabulls Finance Company Private Limited (the "Finance Company").

## BACKGROUND

As set forth in this Court's previous Memorandum Opinion,[2] on May 31, 2005, Amaranth LLC entered into a "Share Subscription and Shareholders Agreement" with Indiabulls and the Finance Company. On June 6, 2005, the Agreement was amended "so as to replace Amaranth with Amaprop as a party," and "[a]ll of Amaranth's rights and obligations under the . . . Agreement . . . [were] vest[ed] with Amaprop." (Matano Decl., Ex. B at 4) The Agreement contained a broad arbitration clause, requiring that "[a]ny action arising [out of or] relating to this Agreement or the other Transaction Documents shall be settled by arbitration in the State of New York." (Id., Ex. A, Section 12.11)

In January 2010, a dispute arose between Amaprop and Indiabulls as to certain rights Amaprop wished to exercise under the Agreement. Accordingly, Amaprop filed a notice of arbitration and statement of claim with the International Centre for Dispute Resolution of the American Arbitration Association (the "ICDR"). (Cmplt. ¶ 13; Matano Decl. ¶¶ 16-18; Ex. G) The parties made initial appearances in the arbitration proceeding, and Respondents sought additional time to file their Statements of Defense. On March 4, 2010, however, before such Statements of Defense were due, Respondents obtained ex parte injunctions from the High Court of Judicature at Bombay enjoining Amaprop from proceeding with the arbitration. (Matano Decl., Ex. U, V)

Amaprop filed this action on March 9, 2010, a hearing was held on March 17, 2010, and on March 23, 2010, this Court granted Amaprop's petition to compel arbitration and motion for a preliminary anti-suit injunction, finding that the underlying dispute "[fell] within the Agreement's arbitration clause" and that it was "clear that Respondents have refused to

---

[2] Familiarity with the facts of this case, as set forth in Amaprop Ltd., 2010 WL 1050988, *1, is presumed, and only those facts relevant to the instant motion are set forth here.

arbitrate." Amaprop Ltd., 2010 WL 1050988, at *3. The Court further found that Respondents had submitted a brief with a "misleading redaction of the Agreement's arbitration clause" and had "proceeded in the utmost bad faith." Id. at *6. The Court found that there was "overwhelming evidence . . . that the pending litigation in India [would] cause Amaprop delay, inconvenience, and expense," and that "[b]ecause of the Indian court's orders enjoining arbitration, Amaprop has been forced to expend considerable resources in briefing the issues currently before this Court." Id. at *7.

Amaprop now seeks an award of its attorneys' fees and costs through March 17, 2010, the date of the hearing on its petition to compel arbitration and motion for a preliminary injunction.

## DISCUSSION

### I. LEGAL BASIS FOR AN ATTORNEYS' FEE AWARD

Under Federal Rule of Civil Procedure 54(d)(2), "[a] claim for attorney's fees and related nontaxable expenses must be made by motion" and must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2). While parties typically must bear their own attorneys' fees under the "American Rule," see U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co., 369 F.3d 34, 74 (2d Cir. 2004) (citing Summit Valley Indus., Inc. v. United Bhd. of Carpenters & Joiners, 456 U.S. 717, 721 (1982)), there are three generally recognized exceptions: "(1) where a statute or enforceable contract provides for an award of attorneys' fees; (2) where the prevailing plaintiff confers a common benefit upon a class or fund; and (3) where a party wilfully disobeys a court order or 'when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Alcatel Space, S.A. v. Loral Space & Communications, Ltd., No. 02 Civ. 2674(SAS), 2002 WL

3

1391819, at *6 (S.D.N.Y. June 25, 2002) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257-60 (1975)). Amaprop argues that it is entitled to an attorneys' fee award both under the Agreement and under this Court's inherent power to award fees where a losing party has litigated in bad faith or vexatiously. (Pet. Br. 2-7)

### A. Amaprop's Right to Attorneys' Fees under the Agreement

Parties to a contract may, of course, "agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1312-13 (2d Cir. 1993) (citing Alland v. Consumers Credit Corp., 476 F.2d 951, 956 (2d Cir. 1973); United States v. Carter, 217 U.S. 286, 322 (1910)). Here, Section 10.1 of the parties' Agreement requires Indiabulls to indemnify Amaprop for losses it suffers as a result of a breach by Indiabulls or the Finance Company:

> [Indiabulls] shall indemnify [Amaprop] . . . and hold [Amaprop] harmless from and against, any and all Losses suffered, incurred or sustained . . . resulting from, arising out of or relating to any breach or . . . non-fulfillment of or failure to perform any covenant or agreement on the part of either [Indiabulls] or [the Finance Company] contained in any of the Transaction Documents.

(Matano Decl., Ex. A, Section 10.1) "Loss" is defined in the Agreement to include

> any loss, liability, claim, damage, fine, fee, penalty, deficiency, and expense (including without limitation interest, court costs, fees of attorneys, accountants and other experts or other expenses of litigation or other proceedings or of any claim, default or assessment) . . . ."

(Id. Section 13.1) (emphasis added).

Amaprop argues that Indiabulls breached the Agreement's broad arbitration clause by bringing an ex parte action in India – in which Indiabulls obtained a court order enjoining Amaprop from proceeding with the New York arbitration (see Matano Decl., Ex. V; Amaprop Ltd., 2010 WL 1050988, at *2) – and that accordingly it is entitled to recover the

4

attorneys' fees it expended in litigating Indiabulls' wrongful breach.  (Pet. Br. 2-4)

Indiabulls – which previously took extraordinary steps to derail the New York arbitration proceeding – now argues that Amaprop's request for attorneys' fees "should be submitted to arbitration."  (Resp. Br. 1)  Indiabulls contends that to the extent that Amaprop is relying on the Agreement for its attorneys' fee claim, that claim must be submitted to arbitration in accordance with the Agreement's broad arbitration clause, which covers "[a]ny action arising [out of or] relating to this Agreement or the other Transaction Documents."  (Matano Decl., Ex. A, Section 12.11)  In light of the breadth and scope of the Agreement's arbitration clause, this Court will consider whether Amaprop should receive an attorneys' fee award as a matter of this Court's inherent power.

### B. Attorneys' Fee Award Pursuant to Court's Inherent Power

It is well established that "a court may assess attorneys' fees . . . when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . .'"  Alyeska Pipeline Serv. Co., 421 U.S. at 258-59; see also New York City District Council of Carpenters Pension Fund v. Keystone Window Installers, Inc., No. 09 Civ. 9509(DLC), 2010 WL 624835, at *2 (S.D.N.Y. Feb. 22, 2010) ("'[p]ursuant to its inherent equitable powers, . . . a court may award attorney's fees when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons'") (quoting Int'l Chem. Workers Union (AFL-CLO), Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d Cir. 1985)).  Courts issue such awards pursuant to their "inherent power."  Id. at 259.

The Second Circuit has stated that a claim is brought in "bad faith" when it is "entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons."  Browning Debenture Holders' Committee v. DASA Corp., 560

5

F.2d 1078, 1088 (2d Cir. 1977).  In cases involving unfounded opposition to petitions to compel arbitration, courts have awarded attorneys' fees "where 'the party refusing arbitration acted without justification or did not have a reasonable chance to prevail.'"  Sands Bros. & Co., Ltd. v. Nasser, No. 03 Civ. 8128(BSJ), 2004 WL 26550, at *3 (S.D.N.Y. Jan. 5, 2004) (awarding attorneys' fees where "Plaintiffs have failed to make even a colorable argument explaining why [Defendant] could not require the Individual Plaintiffs to arbitrate," and where losing parties had "decided to mischaracterize or ignore the law of the Circuit – a tactic that they could not have expected to 'have a reasonable chance to prevail'") (quoting Newspaper Guild of New York v. New York Times Co., 95 Lab. Cas. (CCH) P13, 1981 U.S. Dist. LEXIS 15366, at *4-5 (S.D.N.Y. Oct. 29, 1981); citing Chauffeurs, Teamsters and Helpers, Local 765 v. Stroehmann Brothers Co., 625 F.2d 1092, 1094 (3d Cir. 1980) ("In suits to compel one party to submit to arbitration[,] . . . [attorneys'] fees are generally awarded . . . if the party resisting arbitration did not have a 'reasonable chance to prevail.'") (citations omitted)).

    Here, as this Court discussed at length in its earlier decision, Indiabulls proceeded in the "utmost bad faith" in seeking to frustrate Amaprop's right to have the parties' dispute proceed to arbitration:

> After signing an agreement in which the parties promised that all disputes would be resolved through arbitration, and after disputes indisputably covered by the arbitration clause of the Agreement arose, Amaprop pursued its arbitration remedy.  Respondents appeared in that action, promised to cooperate in the appointment of an arbitrator, and sought – and were granted – additional time to file a statement of defense.  A little more than one week after obtaining an extension of time from the ICDR, however, Respondents applied on an ex parte basis to an Indian court for an injunction barring the arbitration proceedings they had just appeared in from going forward. . . . Respondents gave Amaprop no notice of their decision to seek injunctive relief in India, and after obtaining the injunctions have refused to even supply Amaprop with the underlying papers.  Moreover, as Respondent's counsel made clear at the March 17, 2010 hearing, Amaprop now faces contempt sanctions in India if it proceeds with the New York arbitration.  (March 17, 2010 Tr. 17)

6

> After Amaprop sued here to enforce the parties' agreement to arbitrate, Respondents submitted a brief in which they argued – based on a misleading redaction of the Agreement's arbitration clause – that Respondents' decision to obtain an injunction in India barring the New York arbitration from proceeding was entirely consistent with their obligations under the Agreement. At the March 17, 2010 preliminary injunction hearing, Respondents argued that they "did not seek to avoid the arbitration" even though they had obtained injunctions barring the arbitration from proceeding. In short, Respondents have acted in bad faith throughout and in a manner calculated to cause vexation to Amaprop.

Amaprop Ltd., 2010 WL 1050988, at *6.[3] This record of bad faith conduct provides an ample basis for an award of attorneys' fees and costs.

## II.  COMPUTATION OF ATTORNEYS' FEE AND COSTS AWARD

Generally, "[f]ee awards in the Second Circuit are computed under the lodestar method" – sometimes referred to as the "presumptively reasonable fee" method, see Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d 182, 183 (2d Cir. 2008) – "'which multiplies hours reasonably spent by counsel times a reasonable hourly rate.'" ACE Ltd. v. CIGNA Corp., No. 00 CIV. 9423(WK), 2001 WL 1286247, at *2 (S.D.N.Y. Oct. 22, 2001) (quoting General Electric Co. v. Compagnie

---

[3] Indiabulls claims, as it did in opposing the petition to compel arbitration, that "the actions in the Indian Court were initiated in good faith, and . . . were necessary to ensure that Respondents remained in compliance with Indian laws." (Resp. Br. 7) The Court explicitly rejected this argument in its earlier opinion:

> Respondents argue that they "were under a legal requirement to obtain the permission of the [Reserve Bank of India]" before they could perform their buy back obligations under the Agreement, and that they were thus "forced to seek an order from the Indian Court enjoining the Arbitration while [they] sought the requisite permission to effectuate the said purchase." (Resp. Br. at 11) In the Agreement, however, the parties recite that "no consent, approval, license, permit, order or authorization of, or registration, declaration or filing, or notice . . . [to] any Governmental Entity or any other Person is required to be obtained or made by or with respect to the Company or any subsidiary or their respective affiliates in connection with the execution, delivery, and performance of this Agreement. . . ." (Matano Decl., Ex. A, Section 3.4)

Amaprop Ltd., 2010 WL 1050988, at *4 n.6.

7

Euralair, S.A., No. 96 Civ. 0884, 1997 WL 397627, at *4 (S.D.N.Y. July 3, 1997)). "Both the evaluation of reasonable attorneys' fees and the reduction of such fees lies within the sound discretion of the Court." Id. (citing Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 298 (S.D.N.Y. 2001)); see also Suchodolski Associates, Inc. v. Cardell Financial Corp., Nos. 03 Civ. 4148(WHP), 04 Civ. 5732(WHP), 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2008) (citing Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1183 (2d Cir. 1996)).

Amaprop seeks attorneys' fees in the amount of $167,458.28 for the work of Orrick, Herrington & Sutcliffe LLP attorneys Robert L. Sills, Richard S. Goldstein, Katherine L. Maco, and Christine Anne Malik,[4] and paralegal James Cangialosi, and costs in the amount of $13,941.54. In support of its motion, Amaprop has submitted the invoice it received from Orrick for fees and disbursements, biographical information concerning three of the four attorneys, and a breakdown of LexisNexis and Westlaw legal research charges. (Sills Decl., Ex. B, C; Sills Supp. Decl., Ex. V, W) Amaprop has also submitted, for purposes of comparison, examples of fee requests submitted by other Manhattan law firms that were found to be reasonable, as well as an example of a fee schedule submitted by Respondent's counsel in an unrelated matter. (Sills Supp. Decl., Ex. E–R) Indiabulls argues that the fees and costs sought by Amaprop are excessive and unreasonable.

A.   **Hourly Rates**

Orrick's invoice to Amaprop reflects the following billing rates: $865 for senior partner Robert Sills; $700 for partner Richard Goldstein; $445 for associate Katherine Maco; $355 for Christine Malik (law clerk awaiting admission); and $285 for paralegal James Cangialosi. (Sills Decl., Ex. B) After a 12% discount negotiated with the client, the invoices

---

[4] Malik was a law clerk awaiting admission at the time the fees accrued. (Pet. Br. 9 n.12)

8

total $167,458.28 for 353.7 hours of work.  (Id.)  Disbursements for legal research ($10,856.18), document reproduction ($2,740), word processing ($317.37), and express delivery ($27.99) amount to $13,941.54.

After application of the 12% discount Orrick negotiated with Amaprop, the effective billing rates of Orrick personnel are as follows:

>Robert Sills (graduated from law school in 1976): $761

>Richard Goldstein (graduated from law school in 1994): $616

>Katherine Maco (graduated from law school in 2007): $392

>Christine Anne Malik (graduated from law school in 2009): $312

>James Cangialosi (paralegal):  $251

Indiabulls argues that these billing rates are unreasonably high, and cites examples of lower rates recently approved in this District.  (Resp. Br. 8)  For example, the rate for a senior partner at Cravath, Swaine & Moore – who has more years of experience than Sills – was set at $700 in Malletier v. Dooney & Bourke, Inc., No. 04 Civ. 5316(RMB)(MHD), 2007 WL 1284013, at *4 (S.D.N.Y. April 24, 2007), and the rate for senior partners in a complex securities class action was capped at $500 in In re Initial Public Offering Securities Litigation, 671 F. Supp. 2d 467, 507 (S.D.N.Y. 2009).

Amaprop contends, however, that the rates listed above are reasonable, and cites examples of similar – and higher – fees that were approved recently in this District,[5] including fees for Sills himself in unrelated cases.[6]  Moreover, courts in this District have approved an

---

[5] The rates were all approved in bankruptcy cases, which Amaprop argues "provide a useful comparison because, while not exactly identical to the work performed here, those rates are requested by law firms of comparable size as Orrick and reflect work of comparable scope and complexity." (Pet. Reply Br. 6 n.5)

[6] Sills' rates were approved in Telenor Mobile Communications AS v. Storm LLC, No. 07 Civ.

9

hourly rate of $885 for a partner admitted to the bar in 1982,[7] an hourly rate of $845 for a partner admitted to the bar in 1999,[8] and hourly rates of $495 and $460 for associates with two years' experience.[9]  (Sills Supp. Decl. ¶¶ 4, 5, 7 and Ex. H, I, J, K, N, O)

The determination of reasonable hourly rates is a factual issue committed to the court's discretion, and is typically defined as the market rate a "reasonable, paying client would be willing to pay."  Arbor Hill, 522 F.3d at 184.  In determining what rates are reasonable, a court should rely both on evidence as to the rates counsel typically charges, Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005), and "its own knowledge of comparable rates charged by lawyers in the district."  Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004) (citing Ramirez v. N.Y. City Off-Track Betting Corp., No. 93 Civ. 682 (LAP), 1997 WL 160369, at *2 (S.D.N.Y. Apr. 3, 1997)).  The size of the firm may also be considered as a factor if it would affect the hourly rate, "primarily due to varying overhead costs."  Cioffi v. N.Y. Cmty. Bank, 465 F. Supp. 2d 202, 219 (E.D.N.Y. 2006).

"A reasonable starting point for determining the hourly rate for purposes of a [presumptively reasonable fee] calculation is the attorney's customary rate."  Parrish v. Sollecito, 280 F. Supp. 2d 145, 169-170 (S.D.N.Y. 2003).  Courts are also instructed to look to market rates "'prevailing in the community for similar services by lawyers of reasonably comparable

---

6929(GEL), 2009 WL 585968, *1 (S.D.N.Y. Mar. 9, 2009); Telenor Mobile Communications AS v. Storm LLC, 2009 WL 2168835, *1 (S.D.N.Y. July 20, 2009); and Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A., No. 06 Civ. 5618 (PKC)(HBP) (Docket No. 41) (S.D.N.Y. Aug. 8, 2008).
[7] In re Chemtura Corp., et al., No. 09-11233(REG) (Bankr. S.D.N.Y. Jan. 28, 2010).  The law firm was O'Melveny & Myers LLP.  Paralegal rates of $245 and $260 were also approved.  (Sills Supp. Decl., Ex. H)
[8] In re Star Tribune Holdings Corp., et al., 09-10244(RDD) (Bankr. S.D.N.Y. July 13, 2009).  The law firm was Davis Polk & Wardwell LLP.  Paralegal rates were approved that range from $110 to $315.  (Sills Supp. Decl., Ex. J)
[9] In re CIT Group Inc., Case No. 09-16565(ALG) (Bankr. S.D.N.Y. Feb. 17, 2010).  The law firm was Skadden, Arps, Slate, Meagher & Flom LLP.  Paralegal rates were approved that range from $80 to $360.  (Sills Supp. Decl., Ex. N)

10

skill, experience, and reputation.'" Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). The relevant community in this case is the Southern District of New York. See In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987).

Amaprop has provided Orrick's invoice for fees and disbursements in this action (Sills Decl., Ex. B), and has offered evidence that the fees charged by – and awarded to – Orrick in previous cases are consistent with those requested here. See Telenor Mobile Communications AS v. Storm LLC, No. 07 Civ. 6929(GEL), 2009 WL 585968, *1 (S.D.N.Y. Mar. 9, 2009). In support of its motion, Amaprop has also provided seven examples of court-approved rates for New York firms of comparable size and reputation; in contrast, Indiabulls provided two examples of lower fee schedules. Although the evidence shows – not surprisingly – that attorneys with similar experience at comparable firms charge a range of billing rates, the Orrick fees sought by Amaprop fall within that range. Accordingly, the Court finds that the hourly rates sought by Amaprop are reasonable in light of the evidence offered by the parties.

Indiabulls also argues that the requested paralegal rate of $251 per hour is unreasonable. (Resp. Br. 10) Amaprop has submitted evidence, however, that Duane Morris, Indiabulls' counsel in this matter, has previously sought and obtained an award of fees in an unrelated case in which a paralegal rate of $255 was approved. (Sills Supp. Decl., Ex. R, I) Moreover, Amaprop has submitted fee schedules for bankruptcy cases indicating that paralegal rates as high as $360 per hour have been approved. (See, e.g., Sills Supp. Decl., Ex. N) Based on the evidence submitted by the parties, the Court concludes that a paralegal rate of $251 is reasonable here.

11

B.      **Number of Hours**

After determining appropriate hourly rates, courts must calculate the reasonable number of hours billed in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 189-90.  As with the determination of a reasonable rate, the court must look at both the "contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done," New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), and also "to 'its own familiarity with the case . . . and its experience generally.'"  Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (quoting Di Filippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985)).  Where a party submits deficient or incomplete billing records, courts should reduce the requested fee award.  See Hensley v. Eckerhart, 461 U.S. 424, 437 n.12 (1983) (attorney seeking fee award must, at least, "identify the general subject matter of his time expenditures").  Courts may also exclude "excessive, redundant or otherwise unnecessary hours" from the calculation, Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999), or make an across-the-board reduction in the number of hours. See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997).  The hours analysis turns not on what appears necessary in hindsight, but on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

Here, Amaprop has submitted an invoice indicating "for each attorney, the date, hours expended, and nature of the work done."  (Sills Decl., Ex. B; see New York State Ass'n for Retarded Children, 711 F.2d at 1148)  Amaprop seeks an award for 353.7 hours over a twelve-day period:  73.5 hours of partner Sills' time, 58.6 hours of partner Goldstein's time, 112.7 hours of associate Maco's time, 64.4 hours of associate Malik's time, and 44.5 hours of

12

paralegal Cangialosi's time.  (Sills Decl., Ex. B)  Indiabulls claims that "the number of hours claimed [is] unreasonable, excessive, and in many instances, duplicative."  (Resp. Br. 10)  Specifically, Indiabulls contends that "[a] claim of 354 hours for work performed over the course of only 12 days, on a motion to compel arbitration, which did not involve any novel issues, is blatantly excessive."  (Id. at 11)  In support of this argument, Indiabulls cites Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 277 F. Supp. 2d 323, 325 (S.D.N.Y. 2003), in which the court found that "the 123.75 hours spent by Buyers's counsel on a Motion to Dismiss appears to this Court to be 'excessive on its face.'"

Here, as in Telenor Mobile Communications AS v. Storm LLC, 2009 WL 2168835, at *3 (S.D.N.Y. July 20, 2009), however – a case that likewise involved a petition to compel arbitration and motion for anti-suit injunction – "the nature of the matter tends to account for the high fees. . . . The complexity of the transactions and their international nature require extensive factual investigation and costly transnational consultations."  Petitioner contends – and the Court agrees – that Orrick's representation "involved international issues, complex procedural and legal questions, and an understanding of the issues of Indian law raised by Respondents and the procedures that would be followed in the Indian Court in which Respondents had brought their improper actions."  (Pet. Br. 11)  Moreover, it was Indiabulls' improper conduct in India that presented the legal complexity and the need for swift action, and that led to the expenditure of time by Amaprop's counsel.  As in Telenor Mobile Communs. AS v. Storm LLC, 584 F.3d 396, 410 (2d Cir. 2009), "[Respondent's] situation, like that of the apocryphal parricide seeking mercy because he had been orphaned, is entirely of its own making."  Under these circumstances, the Court finds that the hours expended by Amaprop's counsel were not unreasonable.

13

### C.      Billing Practices

Indiabulls argues that "because of the vagueness of [Orrick's] entries and block-billing, it is impossible to tell how much time was actually spent in duplicative 'team meetings' and conferences." (Resp. Br. 13)  Indiabulls also complains about the appearance of four Orrick attorneys at the preliminary injunction hearing.  (Id. at 14)

"[T]he practice of block billing is not prohibited in this Circuit. . . . 'It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'  Instead, the Court must look 'at the big picture' presented by the fee application."  Rodriguez ex rel. Kelly v. McLoughlin, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999) (quoting U.S. Football League v. National Football League, 704 F. Supp. 474, 477 (S.D.N.Y. 1989)) (internal quotations omitted).  However, "'[w]hen a court is unable to determine the reasonableness of a fee application due to vagueness, a percentage reduction is appropriate.'"  Suchodolski Associates, 2008 WL 5539688, at *2 (quoting New York Ass'n for Retarded Children, 711 F.2d at 1146).

Here, Orrick's time entries do not warrant a reduction in fees.  While Indiabulls complains, for example, about a March 5, 2010 meeting attended by four Orrick lawyers (Resp. Br. 13 n.6), the time entries for March 5 clearly indicate specific tasks that each team member performed,[10] and given that this meeting took place the day after Indiabulls had taken the

---

[10] For example, Malik's entry reads: "Confer with Mr. Sills, Mr. Goldstein, and Ms. Maco regarding filling of anti-suit injunction and motion to compel arbitration against Indiabulls; undertake background reading re same; research New York Federal District Courts and Second Circuit decisions on forum non conveniens issues between New York and India; research government-published profiles of India; search Indian court logs for Notice of Motion order." (Sills Decl., Ex. B)

The entry for Sills reads: "Conference with Mr. Goldstein, Ms. Maco and Ms. Malik re anti-suit injunction, telephone call with Mr. Goldstein, Ms. Maco and Mr. Matano re anti-suit injunction

14

extraordinary step of obtaining an ex parte injunction from an Indian court, it is hardly surprising that attorneys would meet to discuss this development, future strategy, and assignment of tasks. Indeed, Indiabulls acknowledges (Resp. Br. 12) that "[t]he emergency nature [of the application] may justify the number of lawyers."[11]

While courts have imposed fee reductions where counsel overstaffed a case, Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 98 (2d Cir. 1997), or where time was expended on "issues unrelated to the meritorious claim," Seitzman v. Sun Life Assurance Co. of Canada, Inc., 311 F.3d 477, 487 (2d Cir. 2002), those circumstances are not present here. Indiabulls itself concedes that the case was not overstaffed, and Amaprop prevailed on both its petition to compel arbitration and its motion for an anti-suit injunction. The attendance of four Orrick attorneys at the March 17, 2010 hearing likewise does not warrant a reduction in fees; the hearing was the culmination of extensive motion practice and was critical to the outcome of Amaprop's petition to compel arbitration and motion for an anti-suit injunction. Given the emergency nature of Amaprop's application, and the abbreviated time for briefing, it is not

---

and motion to compel arbitration; review Indian Court orders; conference regarding response to Indian orders; conference with Indian counsel regarding possible appearance in Indian proceedings and various issues of Indian law; research and drafting regarding motion for anti suit injunction in federal court in New York." (Id.)

[11] Indiabulls objects, however, to entries that "do not show . . . why it was necessary for three attorneys to review and revise the same motion papers" (Resp. Br. 16), and quotes from a case in which fees were reduced when the work "appear[ed] to consist of conferrals with co-counsel and reviewing and offering editorial comments on the work of others." In re AMF Bowling, 334 F. Supp. 2d 462, 468 (S.D.N.Y. 2004). However, the next sentence in AMF Bowling makes clear that the court was referring to duplicative work done by sets of class counsel in a class action: "I do not consider a review by one set of class counsel of the work product of another set of class counsel to be recompensable, absent a particularized showing of the value that it added." Id. The fee application in AMF Bowling also "fail[ed], except in a perfunctory narrative devoid of dates or specifics, to describe the work performed." Id. That is not the case here, as noted above.

15

surprising that the senior lawyers on the team would need support from the more junior lawyers who performed the underlying research and initial drafting.

Indiabulls also objects to the amount of time and number of people involved in serving materials on defense counsel. (Resp. Br. 16) While, in an ordinary case, billing for three people to serve papers might be unreasonable, this is not an ordinary case. Petitioner encountered significant difficulties in serving papers on Respondents. For example, the fax number listed on the cover letter accompanying the Finance Company's <u>ex parte</u> injunction served on Amaprop was inoperative. (Pet. Reply Br. 9; Sills Supp. Decl., Ex. S, T) Moreover, Petitioner was unable to email documents to the Finance Company because the email box of the Finance Company's counsel was full. (<u>See</u> Pet. Reply Br. 9 n.7; Sills Supp. Decl., Ex. U) Given that the Court had required documents to be served within 24 hours on counsel in India, and that the most expeditious means (faxing and emailing) proved unsuccessful, the efforts and time expended in making service are not unreasonable.

For the reasons stated above, this Court concludes that the fee rates and time charges sought by Amaprop are reasonable, and that Amaprop has submitted reliable evidence concerning the nature of its counsel's work and fees. Accordingly, this Court will enter an attorneys' fee award in the full amount sought by Amaprop: $167,458.28.

**D.    Costs**

Amaprop seeks $13,941.54 in costs for the following disbursements:

Document reproduction: $2,740

Express delivery: $27.99

Lexis research: $9,153.25

Westlaw research: $1,702.93

>      Word processing: $317.37

(Sills Decl., Ex. B)  "'[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"  Suchodolski Associates, 2008 WL 5539688, at *2 (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998)).

Litigants may recover photocopying costs, "but . . . must make clear what documents were copied, how many copies were made, the cost per page charged for copying, and why the copies were necessary."  Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC, No. 05 Civ. 6757(LTS)(MHD), 2009 WL 466136, at *8 (S.D.N.Y. Feb. 25, 2009).  Additionally, "computer research fees are compensable on a fee application if the firm regularly bills its clients for them."  Id. at *7.  However, compensation has been denied when "defendants fail to document adequately the legal-research charges for which they seek compensation," such as by not providing "invoices from the computer research service."  Id.

Here, Amaprop's document reproduction and legal research costs are sufficiently documented.  Invoices from both LexisNexis and Westlaw have been provided (Sills Supp. Decl., Ex. V, W), and the per page cost of photocopies from an in-house document services vendor was submitted.  (Pet. Reply Br. 9)

Word processing costs have not been explained in sufficient detail, however.  "[A]ll administrative costs must be fully documented, 'including a description of the work performed, how the work is related to the instant case, and the name and title of the person performing the work,' to show that the costs are reasonable and necessary."  Lucky Brand Dungarees, Inc., 2009 WL 466136, at *6 (quoting Barcia v. Sitkin, Nos. 79 Civ. 5831(RLC), 79 Civ. 5899(RLC), 1997 WL 66785, at *5 (S.D.N.Y. Feb. 14, 1997)).  Amaprop's submissions do not provide any explanation for the $317.37 in "word processing" costs.  Accordingly, this

amount will be disallowed.[12]

Amaprop will be awarded $13,624.17 in costs.

## CONCLUSION

For the reasons stated above, Amaprop's motion for attorneys' fees and costs is GRANTED in the amount of $167,458.28 in attorneys' fees and $13,624.17 in costs. The Clerk of the Court is directed to terminate the motion (Docket No. 23) and to close this case.

Dated: New York, New York
       March 16, 2011

                                  SO ORDERED.

                                  _____
                                  Paul G. Gardephe
                                  United States District Judge

---

[12] Moreover, "[c]ourts of this Circuit have recognized that clerical and secretarial services are part of overhead and are not generally charged to clients." Sulkowska v. City of New York, 170 F. Supp. 2d 359, 368 (S.D.N.Y. 2001).