```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
AMAPROP LIMITED,                     :   10 Civ. 1853 (PGG) (JCF)
                                     :
              Petitioner,            :   11 Civ. 2001 (PGG) (JCF)
                                     :
      - against -                    :       MEMORANDUM
                                     :       AND ORDER
INDIABULLS FINANCIAL SERVICES        :
LIMITED,                             :
                                     :
              Respondent.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

In February 2011, Petitioner Amaprop Limited ("Amaprop") and Respondent Indiabulls Financial Services ("Indiabulls") engaged in an international arbitration arising from a dispute under the Shareholders Agreement entered into by the parties on May 31, 2005 (Share Subscription and Shareholders Agreement dated May 31, 2005 (the "Agreement"), attached as Exh. 1 to Declaration of John L. Gardiner dated May 3, 2012 ("Gardiner Decl.")).  On March 21, 2011, the arbitral tribunal issued an award (the "Award") in favor of Amaprop in the amount of approximately $48.9 million, and on September 9, 2011, in Case No. 11 Civ. 2001 (the "2011 Action"), the Honorable Paul G. Gardephe, U.S.D.J., granted Amaprop's petition to confirm the Award in this Court (the "Judgment"). Amaprop now moves pursuant to Rule 69(a)(2) of the Federal Rules of Civil Procedure, and New York Civil Practice Law and Rules ("CPLR")

§§ 5222, 5223, and 5224 to compel Indiabulls to comply with a post-Judgment subpoena and restraining notice served upon it on October 14, 2011 (the "Oct. 14 Subpoena and Restraining Notice"), and to grant Amaprop leave to serve Indiabulls with a revised restraining notice to obtain its compliance with the Judgment.  In addition, Amaprop requests a ruling that a subpoena and restraining order delivered to Indiabulls' attorneys on July 18, 2012 (the "July 18 Subpoena and Restraining Notice") in Case No. 10 Civ. 1853 (the "2010 Action), was properly served on Indiabulls.

For the following reasons, the motion to compel is granted in part and denied in part, and the request to declare service effective is granted.

<u>Background</u>

Because the parties are familiar with the facts and procedural history of the underlying arbitration, as well as the award of attorneys' fees in the 2010 Action and the confirmation of the Award and entry of the Judgment in the 2011 Action, I will limit my discussion of the facts to those relevant to the pending motions. Additional background information is available in Judge Gardephe's Memorandum Opinion and Order of March 16, 2011 ("March 16 Order") (No. 10 Civ. 1853, Docket no. 35) and his Memorandum Opinion and Order of September 9, 2011 ("Sept. 9 Order") (No. 11 Civ. 2001, Docket no. 16).

Since entry of the Judgment in the 2011 Action on September 14, 2011, Indiabulls has not paid any part of the Award.[1] (Memorandum in Support of Amaprop Limited's Motion to Compel Indiabulls to Comply with the Subpoena Served Upon It by Petitioner and to Hold Indiabulls in Civil Contempt ("Pet. Memo.") at 1).  Nor has it paid any of the attorneys' fees ordered in the March 16 Order, which was affirmed by the Second Circuit.  (Letter of Robert L. Sills dated July 13, 2012 ("Sills July 13 Letter") at 2).  On October 14, 2011, Amaprop served Indiabulls with a subpoena and a restraining notice: the subpoena included a subpoena for the production of documents, which requires the respondent "to disclose information identifying the value, form and location of its

_____

[1] Although the respondent did not oppose Amaprop's petition to confirm the Award, it sought to set aside the Award in India by initiating a proceeding pursuant to Section 34 of the Indian Arbitration Act, which would have vacated the Award and prevented its enforcement in India.   (Memorandum of Law by Indiabulls Financial Services Limited in Opposition to Amaprop Limited's Motion (1) to Compel and (2) for an Order of Contempt ("Resp. Memo."), at 5-6).  However, the Indian court ultimately "dismissed th[at] petition on the basis that it lacked jurisdiction under Section 34 of the Indian Arbitration and Conciliation Act" which, according to Indiabulls, "has the effect of lifting the stay of enforcement [of the Award] in India but does not amount to an affirmative order permitting enforcement in India."  (Letter of Timothy G. Nelson dated May 21, 2012).  Although the ultimate relevance of the Section 34 Proceeding to the instant petition is disputed (Letter of Robert L. Sills dated May 22, 2012), the conclusion of that proceeding means that its pendency can no longer be asserted as a basis for excusing the respondent's noncompliance with the Judgment or the Oct. 14 Subpoena and Restraining Notice.

worldwide assets," and a subpoena to testify, which requires the respondent "to produce a witness to testify on Indiabulls's behalf with respect to those assets"; the restraining notice "prohibits Indiabulls from selling, assigning or transferring any of its assets, up to and including the amount of the Judgment." (Pet. Memo. at 1; Declaration of Robert L. Sills dated April 19, 2012 ("Sills Decl."), ¶ 5). The deadlines for compliance with the Oct. 14 Subpoena and Restraining Notice were between October 24, 2011, and November 15, 2011. (Pet. Memo. at 3).

Amaprop served these documents in India by overnight mail, which, it contends, was "expressly authorized by Sections 12.6 and 12.10(b)" of the Agreement. (Pet. Memo. at 2). Further, the petitioner argues, overnight delivery was expressly authorized by an Order signed by Judge Gardephe on October 18, 2011. (Pet. Memo. at 2; Order dated October 18, 2011 ("Oct. 18 Order")). Amaprop also hand delivered copies to Indiabulls' counsel, Skadden, Arps, Slate, Meaghor & Flom LLP ("Skadden"), in New York. (Letter of Robert L. Sills dated Oct. 14, 2011 ("Sills Oct. 14 Letter"), attached as Exh. E to Sills Decl., at 1).

In a letter to petitioner's counsel dated November 7, 2011, Indiabulls argued that its noncompliance with the Oct. 14 Subpoena was justified because the Court lacks personal jurisdiction over Indiabulls; because service of process by overnight mail was

4

improper; because the subpoena bears an incorrect caption; and because the requests for documents and testimony were defective on their face. (Letter of Gregory A. Litt dated Nov. 7, 2011 ("Litt Nov. 7 Letter"), attached as Exh. J to Sills Decl.). The letter did not mention the Oct. 14 Restraining Notice. Amaprop set forth its counter-arguments in a letter dated November 9, 2011 (Letter of Robert L. Sills dated Nov. 9, 2011 ("Sills Nov. 9 Letter"), attached as Exh. K to Sills Decl.), and Indiabulls, in turn, responded with another letter explaining why it believed both the Oct. 14 Subpoena and Restraining Notice to be ineffective (Letter of Gregory A. Litt dated Nov. 14, 2011 ("Litt Nov. 14 Letter"), attached as Exh. L to Sills Decl.). On December 22, 2011, Amaprop sent a letter to Indiabulls asking to meet and confer with respect to its intention to bring a motion to compel compliance with the Oct. 14 Subpoena and reserving the right to seek an order of contempt. (Letter of Robert L. Sills dated Dec. 22, 2011 ("Sills Dec. 22 Letter"), attached as Exh. 8 to Declaration of John L. Gardiner dated May 3, 2012 ("Gardiner Decl.")). Counsel for the respondent indicated its availability to meet and confer in a letter dated January 3, 2012, (Letter of Gregory A. Litt dated Jan. 3, 2012 ("Litt Jan. 3 Letter"), attached as Exh. 9 to Gardiner Decl.), but Amaprop did not respond.

The petitioner then filed the instant motion on April 19,

5

2012.  In its opposition papers, Indiabulls represented that it had not violated the restrictions imposed upon it by the Oct. 14 Restraining Notice and contended that it had maintained assets sufficient to pay the Judgment.  (Resp. Memo. at 21-22). Accordingly, Amaprop has since withdrawn its contempt motion and now seeks permission to serve the respondent with an Amended Restraining Notice "to obtain the broadest restraint against Indiabulls allowable under the New York law, in hope that Indiabulls will finally meet its obligations." (Letter of Robert L. Sills dated May 14, 2012 ("Sills May 14 Letter")).  The petitioner also seeks to serve the Amended Restraining Notice upon Indiabulls directly, by overnight delivery service and by e-mail, pursuant to Rules 4(h)(2) and 4(f)(3).  (Sills May 14 Letter).

In addition, Amaprop asks the Court to declare that its attempted service in the 2010 Action of the July 18 Subpoena and Restraining Notice on Indiabulls through Skadden, which Skadden rebuffed, "was proper and effective."  (Letter of Robert Sills dated July 25, 2012 ("Sills July 25 Letter") at 1, 3; Letter of Robert Sills dated July 27, 2012).

The respondent continues to assert that this Court lacks personal jurisdiction over it, arguing that Indiabulls' consent to arbitrate disputes related to the Agreement in New York does not extend to "an action to enforce a court judgment confirming an

6

arbitral award" and that the clause in the Agreement selecting as a forum for disputes "the courts of the State of New York located in New York" refers only to New York state courts, rather than federal courts. (Resp. Memo. at 9, 10-11; Agreement, §§ 12.10(b), 12.11). Indiabulls further contends that service in India of the Oct. 14 Subpoena and Restraining Notice by overnight mail was insufficient, notwithstanding the Oct. 18 Order, because Amaprop failed to attempt service in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"), 20 U.S.T. 361, T.I.A.S. 6638. (Resp. Memo. at 14-18). The respondent asserts that the attempted service of the July 18 Subpoena and Restraining Notice was ineffective for similar reasons. (Letter of John L. Gardiner dated July 26, 2012 ("Gardiner July 26 Letter")).

I heard oral argument on the disputes on August 21, 2012. (Transcript ("Tr.") at 1).

<u>Discussion</u>

A.  <u>Personal Jurisdiction</u>

Amaprop cites two provisions in the Agreement to support its position that Indiabulls consented to this Court's exercise of personal jurisdiction -- an arbitration clause requiring that "[a]ny [a]ction [] relating to th[e] Agreement . . . shall be settled by arbitration in the State of New York" (Agreement, §

12.11(a)) and a forum selection clause choosing "the courts of the State of New York located in New York" for "any [a]ction with respect to th[e] Agreement" (Agreement, § 12.10(b)).

Indiabulls quibbles with the scope of these provisions, asserting that neither confers jurisdiction in this Court for these post-judgment proceedings. More specifically, the respondent argues that its agreement to arbitrate in New York constituted consent to the jurisdiction of courts in New York only "for certain specified matters directly affecting the arbitration" such as a motion to compel arbitration or a motion to confirm an award -- that is, to proceedings relating to the enforcement of the arbitration agreement, itself, and not to proceedings to enforce the judgment confirming an award. (Resp. Memo. at 9-10 (emphasis omitted)). In addition, Indiabulls argues (1) that the forum selection clause consents to the exercise of personal jurisdiction only by New York state courts rather than by federal courts, and (2) that the judgment confirming the arbitration award extinguished Amaprop's contract claim -- and with it any jurisdictional consent included in the contract -- and replaced it with a new claim known as a judgment debt, which has no relation to the provisions in the Agreement. (Resp. Memo. at 11-13). Therefore, according to the respondent, the proper interpretation of these contractual provisions does not demonstrate that it consented to this Court's

8

exercise of jurisdiction over this enforcement proceeding.

However, the Agreement is irrelevant to this jurisdictional question, because Indiabulls indisputably consented to personal jurisdiction by litigating these cases in this Court. "If a party enters a case, makes no objection to jurisdiction, and asks the court to act on its behalf in some substantive way, it will be held to have waived further objection" to the court's exercise of personal jurisdiction. Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir. 1972); see also Insurance Corp. of Ireland v. Comapagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982) ("[A]n individual may submit to the [personal] jurisdiction of the court by appearance."); India Steamship Co. v. Kobil Petroleum Ltd., 620 F.3d 160, 161 (2d Cir. 2010) ("[The defendant] concedes that its general appearance conferred on the district court jurisdiction that is general and in personam."). There is no dispute that Indiabulls appeared in the 2010 Action, litigating it up to the Second Circuit and back to this Court, where it has been re-opened for the purpose of enforcement of the attorneys' fees award. (Memorandum Endorsement dated July 16, 2012). Similarly, Indiabulls appeared in the 2011 Action and participated in the case for months without objection, even submitting to the entry of a permanent injunction constraining its prosecution of certain

9

proceedings in India.[2] (Memorandum Endorsement dated June 1, 2011; Stipulation and Order for Permanent Injunction dated June 16, 2011; Notice of Appearance by John L. Gardiner dated June 20, 2011; Notice of Appearance by Timothy Graham Nelson dated June 20, 2011; Tr. at 11, 28). Indeed, at oral argument, counsel for Indiabulls admitted that it was not until November 2011 that it interposed any objection to personal jurisdiction. (Tr. at 37; Litt Nov. 7 Letter at 1). By then, however, Indiabulls' conduct had already waived such an objection.[3]

First American Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC, 540 F. Supp. 2d 483 (S.D.N.Y. 2008), does not undermine this conclusion. In that admiralty case, which arose from a charter relationship, the court ruled on two discrete matters. The court first granted plaintiff First American leave to amend its complaint to add Strong Vessel Operators LLC ("SVO") as a defendant in order that the court could "determine . . . whether SVO [wa]s the successor-in-interest to [defendant] Van Ommeren" and thus

---

[2] The fact that Indiabulls chose not to oppose the confirmation of the arbitration award (Tr. at 27-28) does not undermine the fact that the company appeared in and litigated this action without jurisdictional objection for months.

[3] Indiabulls has not and cannot now argue that its appearance was somehow involuntary because it was required by the Agreement. Indiabulls is adamant that nothing in the Agreement granted this Court personal jurisdiction over it for these proceedings. (Resp. Memo. at 8-14). Therefore, any appearance had to have been voluntary.

bound by an agreement between Van Ommeren and First American to arbitrate disputes. Id. at 485. Next, the court ruled on First American's application to file pleadings to obtain an attachment under Rule B of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims, which allows attachment of a defendant's property in the hands of a garnishee when the defendant "is not found within the district." SVO argued that it had submitted to arbitration in New York and was consequently subject to the court's personal jurisdiction. Id. Because the court had personal jurisdiction over it, SVO contended that it could be "found" in the district, thus confounding the attachment application. Id. However, under Rule B, the fact that a defendant has consented to the personal jurisdiction of a court will not defeat attachment unless that defendant has a "real presence" in the district; otherwise, a defendant could impede attachment by the simple expedient of appearing and thereby leave the plaintiff without any reasonable means to enforce its rights. Parkroad Corp. v. China Worldwide Shipping Co., No. 05 Civ. 5085, 2005 WL 1354034, at *2 (S.D.N.Y. June 6, 2005) (internal quotation marks omitted) (cited in First American, 540 F. Supp. 2d at 485). SVO's agreement to arbitrate, then, did not demonstrate "that it ha[d] the requisite contacts to be 'found' in th[e] district." First American, 540 F. Supp. 2d at 485. The case therefore does not

11

stand for the proposition that a party who has appeared in an action can later circumvent the court's personal jurisdiction by relying on the reputed jurisdictional limits of an agreement to arbitrate.   Indeed, the cases that might support Indiabulls' argument that an agreement to arbitrate in a forum confers personal jurisdiction over a defendant only for certain proceedings invariably were resolved on motions to dismiss brought at the outset of the action, rather than on objections made after a defendant had participated in a case through judgment.   See, e.g., Mariac Shipping Co. v. Meta Corp., N.V., No. 05 Civ. 2224, 2005 WL 1278950, at *1 (S.D.N.Y. May 31, 2005); Kahn Lucas Lancaster, Inc. v. Lark International Ltd., 956 F. Supp. 1131, 1133 (S.D.N.Y. 1997); Sterling National Bank & Trust Co. of New York v. Southern Scrap Export Co., 468 F. Supp. 1100, 1101 (S.D.N.Y. 1979).

The respondent repeatedly insists that the 2011 Action "is not an action relating to an arbitration or arbitration agreement, but rather is an action to enforce a court judgment . . . confirming the arbitral award." (Resp. Memo. at 1-2, 9).   That ignores the fact that (1) the 2011 Action began with a petition to confirm the arbitral award (Complaint and Petition, ¶ 1); (2) Indiabulls has submitted to the personal jurisdiction of this Court for the purposes of such an action; and (3) Indiabulls conceded that Amaprop was not required to file a new action in which to press

12

these claims.[4]  (Tr. at 46).  Really, the crux of Indiabulls
argument is that "things change post-judgment." (Tr. at 38).  But
it has provided no support for the notion that a court that has
personal jurisdiction over the parties loses that jurisdiction for
the purpose of post-judgment proceedings in the same case.  In <u>FCS</u>
<u>Advisors, Inc. v. Fair Finance Co.</u>, 605 F.3d 144 (2d Cir. 2010),
the Second Circuit held that a contractual choice-of-law provision
does not generally apply to the issue of post-judgment interest
because, once a contract claim is reduced to judgment, that claim
is extinguished in favor of a claim on the judgment, which is no
longer governed by the contract that was part of the underlying
dispute.[5]  However, there was no indication that the district court
needed to revisit the issue of personal jurisdiction in order to
preside over post-judgment proceedings.  Moreover, to the extent

_____

    [4] Specifically, counsel for Indiabulls stated, "[T]here's been
a suggestion that it's the same action for all purposes.  It's
certainly the same captioned action, and we don't contest the
Court's subject matter jurisdiction to conduct a post-enforcement
proceeding . . . ." (Tr. at 46).  Moreover, Indiabulls neither
briefed nor argued during the hearing the previously-asserted
defense that the Oct. 14 Subpoena included an improper caption
because it reflected the case number of the 2011 Action.  (Litt
Nov. 7 Letter at 2).  Therefore, Indiabulls has abandoned the claim
that the Oct. 14 Subpoena is unenforceable because it was mis-
captioned.

    [5] There is an exception when the underlying contract clearly
and unambiguously demonstrated the parties' intent that its
provisions should survive the merger of the claim into the
judgment.  <u>Id.</u> at 148

that <u>FCS Advisors</u> can be read to support the position that a contract-based consent to jurisdiction is extinguished for post-judgment proceedings even if they are part of the same action, it is irrelevant here, because personal jurisdiction over Indiabulls was established not on the basis of the Agreement, but because Indiabulls waived objection to the court's personal jurisdiction by appearing in and litigating this action.

<u>Samsun Logix Corp. v. Bank of China</u>, 740 F. Supp. 2d 484 (2010), is even further afield. In that case, the court had, in an earlier, separate action, confirmed a foreign arbitral award in favor of the plaintiff. <u>Id.</u> at 485. Samsun then filed an action in state court against a number of banks, which were not parties to the original action, seeking to require them to turn over property of the judgment debtor. <u>Id.</u> at 485-86. The case was removed to federal court pursuant to the broad removal provision of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which allows removal of an "action or proceeding . . . relat[ing] to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205; <u>see</u> <u>Samsun</u>, 740 F. Supp. 2d at 486-87. On Samsun's motion for remand, the court held that there was no basis for federal subject-matter jurisdiction, because the turnover action did not "relate" to an arbitral agreement or award, even though it was seeking garnishment

to satisfy an award governed by the Convention.  Id. at 487, 489.
Samsun means that federal subject-matter jurisdiction in a new
action for garnishment cannot be premised on a prior case's
judgment confirming a foreign arbitral award.  It does not indicate
that personal jurisdiction attached through participation in an
action confirming an arbitral award dissolves for the purposes of
post-judgment proceedings in the same case.

In short, by its conduct Indiabulls has submitted to the
Court's personal jurisdiction.  The Court retains such jurisdiction
for the purposes of these post-judgment proceedings.  Indeed, any
other resolution would have constitutional implications.  See
Peacock v. Thomas, 516 U.S. 349, 356 (1996) ("Without jurisdiction
to enforce a judgment entered by a federal court, 'the judicial
power would be incomplete and entirely inadequate to the purposes
for which it was conferred by the Constitution.'" (quoting Riggs v.
Johnson County, 6 Wall. 166, 187 (1868))).

> B.   Service of the October 14 Subpoena and Restraining Notice
>      in India by Overnight Delivery

The conjunction of Rules 4(h)(2) and 4(f)(1) of the Federal
Rules of Civil Procedure allows for service of a summons on a
foreign corporation "by any internationally agreed means of service
that is reasonably calculated to give notice, such as those
authorized by the Hague Convention" or "by other means not

prohibited by international agreement, as the court orders."[6]  Both the United States and India are signatories to the Hague Service Convention; it has been in force in the United States since 1969, and in India since 2007.   See Status Table, Members of the Organization, available at http://www.hcch.net/index_en.php?act= conventions.status&cid=17 (last visited Oct. 2, 2012).

> The Hague Convention provides for several alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state.

Burda Media, Inc. v. Viertel, 417 F.3d 292, 300 (2d Cir. 2005). India has objected to Article 10 of the Hague Service Convention, which allows service by "postal channels."[7]     Hague Service

---

[6] Amaprop proceeds under Rule 69(a)(2) of the Federal Rules of Civil Procedure (Pet. Memo. at 4, 8), which permits discovery "[i]n aid of [] judgment or execution . . . as provided in the[] [Federal Rules of Civil Procedure] or by the procedure of the state where the court is located."  Amaprop has chosen to utilize discovery devices available under the laws of New York State, having issued the Restraining Notice pursuant to CPLR § 5222 and the Subpoena pursuant to CPLR § 5224.  (Pet. Memo. at 4, 8).  However, it may utilize the service procedures established in either the Federal Rules or the rules of service for New York.  See First City, Texas-Houston, N.A. v. Rafidian Bank, 197 F.R.D. 250, 256 (S.D.N.Y. 2000).

[7] Article 10 also preserves "the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination," and "the freedom of any person in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the

Convention, Art. 10; India's Hague Service Convention Reservations.

The advisory committee's notes to Rule 4 of the Federal Rules of Civil Procedure state that "[u]se of the [Hague Service] Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service." Fed. R. Civ. P. 4 advisory committee's note to 1993 Amendments. If such procedures fail, a litigant may serve a foreign entity in compliance with a court order allowing service "by other methods of service not prohibited by international agreements." Fed. R. Civ. P. 4 advisory committee's note to 1993 Amendments; see also Burda Media, 417 F.3d at 301 (noting that "the Hague Convention should be read together with Rule 4"); Gurung v. Malhotra, 279 F.R.D. 215, 218-19 (S.D.N.Y. 2011) (finding use of court-ordered alternative means of service under Rule 4(f)(3) sufficient).

Amaprop purportedly served the Oct. 14 Subpoena and Restraining Order on Indiabulls by overnight delivery. (Sills Decl., ¶ 5). On October 17, 2011, in order to "avoid an unnecessary dispute over service," Amaprop requested permission from the Court to use such a method of service. (Letter from

---

State of destination." Hague Service Convention, Art. 10(b), (c). India "is opposed" to all of these methods. India's Declarations and Reservations to the Hague Convention ("India's Hague Service Convention Reservations"), available at http://www.hcch.net/index_en.php?act=status.comment&csid=984&disp=resdn (last visited Oct. 2, 2012).

Robert L. Sills dated Oct. 17, 2011 ("Sills Oct. 17 Letter"), attached as Exh. 6 to Gardiner Decl.). Judge Gardephe issued the requested order, which declared that service by overnight delivery "shall be, for all purposes, deemed good and sufficient." (Oct. 18 Order). Indiabulls challenges the sufficiency of that service under the Hague Service Convention.

     1.  <u>The Oct. 18 Order</u>

The Oct. 18 Order presents a hurdle for Indiabulls. Judge Gardephe's order clearly authorizes Amaprop to serve the Oct. 14 Subpoena and Restraining Notice on Indiabulls "either personally or by overnight delivery." (Oct. 18 Order). Indiabulls' counterargument -- that the order did not authorize service in this manner because "it did not specify service in India" or mention the Hague Service Convention (Resp. Memo. at 17; Tr. at 41) -- is, at best, difficult to parse. As I understand it, Indiabulls claims that the Oct. 18 Order did not authorize service by overnight delivery because the Federal Rules of Civil Procedure allow a court to order service on a corporation in a foreign country only by means "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). Because, according to Indiabulls, service in India by overnight delivery is prohibited by the Hague Service Convention, the Oct. 18 Order cannot have meant to authorize that means of service. (Resp. Memo. at 17). But this presupposes that Judge

18

Gardephe was somehow unaware that Indiabulls was located in India, which is extremely unlikely given that he has presided over two actions against the corporation and knew of Indiabulls' efforts to evade its obligations under the Agreement and the arbitral award, often by filing actions in India. (March 16 Order at 5-7; Tr. at 27-28, 41).

While denying any intention of doing so (Tr. at 42), Indiabulls is effectively contending that the Oct. 18 Order is incorrect, and it insists that the order is not binding in the case (or on me) because it was issued ex parte. (Tr. at 42, 63). But ex parte contact is "contact with the Court without the advance knowledge or contemporaneous participation of all other parties." Newell Operating Co. v. Shalaby, No. C 09-0185, 2009 WL 533092, at *2 n.1 (N.D. Cal. March 3, 2009). Here, Indiabulls' counsel was contemporaneously provided with a copy of the proposed order and the letter application supporting it. (Sills Oct. 17 Letter at 2-3). The fact that Indiabulls chose not to challenge the order when it was issued or to move to quash the Oct. 14 Subpoena when it was served does not mean that the order was issued ex parte.

Nevertheless, Judge Gardephe did not have the benefit of the parties' briefing and extensive letter-writing campaign when he issued the order. That, and the fact that he has referred this dispute to me for a decision, militates in favor of re-examining

the service of the Oct. 14 Subpoena and Restraining Notice.  See Brentwood Pain & Rehabilitation Services, P.C. v. Allstate Insurance Co., 508 F. Supp. 2d 278, 289 (S.D.N.Y. 2007) (revisiting decision made by a different judge because additional papers were subsequently submitted).  Moreover, addressing the dispute now serves purposes of efficiency and judicial economy.  Given Indiabulls' conduct in this litigation to date, it is unlikely to comply voluntarily with the Oct. 14 Subpoena.  In order to review the propriety of service, then, the respondent would have to be held in contempt so that the Indiabulls could appeal that holding to the Second Circuit.  See In re Grand Jury Subpoena Duces Tecum Dated May 29, 1987, 834 F.2d 1128, 1130 (2d Cir. 1987) ("As a rule, denial of a motion to quash becomes appealable only after the person served with the subpoena refuses to comply and has been held in contempt.").  That would be a waste of judicial resources on the seemingly straightforward task of enforcing a judicially-confirmed arbitral award.

2.    Service in India by Overnight Delivery

Governing law establishes that, because (1) Indiabulls did not waive the provisions of the Hague Service Convention and agree to service of Oct. 14 Subpoena and Restraining Notice by mail in the Agreement and (2) Amaprop did not make any attempt to serve them pursuant to the Hague Service Convention, service in India by

20

overnight courier was ineffective.

        a.   <u>Provisions for Service in the Agreement</u>

There are two provisions in the Agreement that relate to service. Section 12.6 requires "[a]ll notices, demands or requests . . . under th[e] Agreement," to be "made by hand delivery, certified mail, Federal Express or a similarly internationally recognized overnight courier service or facsimile." (Agreement, § 12.6). In Section 12.10(b), the parties (1) agreed that any action with respect to the Agreement "may be brought in the courts of the State of New York located in New York" and (2) "consent[ed] to the service of process of any of th[ose] courts . . . by the mailing of copies of the process to the parties [] as provided in Section 12.6." (Agreement, §12.10(b)(underlining omitted)). Neither of these provisions, however, authorized service in India of the Oct. 14 Subpoena and Restraining Notice by overnight courier.

This is the point on which <u>FCS Advisors</u> supports Indiabulls' position. As discussed above, in that case the court held that under the "merger doctrine" a contractual choice of law provision does not govern the question of post-judgment interest, because the provisions of a contract no longer govern the relationship between the parties once a contract claim has been reduced to judgment. <u>FCS Advisors</u>, 605 F.3d at 148; <u>see also</u> <u>In re A&P Diversified Technologies Realty, Inc.</u>, 467 F.3d 337, 341 (3d Cir. 2006) ("Under

the merger doctrine, a contract is deemed to merge with the judgment, thereby depriving a plaintiff from being able to assert claims based on the terms and provisions of the contractual instrument."); Figueiredo Ferraz Consultoria E Engenharia de Projecto Ltda. v. Republic of Peru, __ F. Supp. 2d __, __, 2012 WL 2052402, at *2 (S.D.N.Y. June 6, 2012) (holding that contractual choice of law provision did not control in action confirming arbitration award).

Here, Amaprop relies on provisions of the Agreement in this post-judgment enforcement action, asserting that, "because not allowing for post-judgment enforcement proceedings would render the arbitration clause meaningless, service under the terms of the [] Agreement is allowed." (Reply Memorandum in Support of Amaprop Limited's Motion to Compel Indiabulls to Comply with the Subpoena Served Upon it by Petitioner ("Reply Memo.") at 6). But there is no question that enforcement proceedings are allowed. No party has argued otherwise. Amaprop's problem is that the Agreement no longer controls issues of service in these proceedings because that contract has merged into the judgment.[8] See FCS Advisors, 605 F.3d

---

[8] Because my resolution of this issue relies on the merger doctrine, I do not address the parties' arguments regarding whether the Agreement's forum selection clause (and accompanying consent to service) specifies only New York state courts, or includes federal courts located in New York.

at 148; <u>In re A&P Diversified Technologies Realty, Inc.</u>, 467 F.3d at 341.

           b.   <u>Service Pursuant to the Oct. 18 Order</u>

Indiabulls recognizes that Rule 4(f)(3) allows a court to order service upon a foreign corporation by means not set out in the Hague Service Convention. (Resp. Memo. at 16). It argues, however, that such alternative service may be ordered only if the party seeking it has attempted service in compliance with the Hague Service Convention and failed because the Central Authority was dilatory or failed to cooperate. (Resp. Memo. at 16). Because Amaprop did not attempt to serve the Oct. 14 Subpoena and Restraining Notice through India's Central Authority, Indiabulls argues, alternative service via overnight courier as allowed by the Oct. 18 Order was ineffective. (Resp. Memo. at 16).

Indiabulls is correct. The advisory committee indicates that "resort may be had" to alternative means of service when the foreign state's Central Authority does not promptly effect service. Fed. R. Civ. P. 4 advisory committee's notes to 1993 Amendments. This requires that the serving party have attempted to use those procedures without success. Case law, as well, supports the notion that a party must attempt service in compliance with the Hague Service Convention before petitioning for permission to serve by alternative means. <u>See</u> <u>Burda Media</u>, 417 F.3d at 301 (approving

alternate service when plaintiff "attempted in good faith to comply with the Hague Convention"); Gurung, 279 F.R.D. at 217 (approving alternate service when plaintiff "had demonstrated the futility of service of process through the Central Authority in New Delhi, India"); In re South African Apartheid Litigation, 643 F. Supp. 2d 423, 433-34 (S.D.N.Y. 2009) (noting that recourse to alternative means of service is appropriate when Hague Service Convention procedures have failed); United States v. Shehyn, No. 04 Civ. 2003, 2008 WL 6150322, at *3 (S.D.N.Y. Nov. 26, 2008) ("However, if a Central Authority is dilatory or refuses to cooperate, a plaintiff may request a U.S. court to order alternative service methods pursuant to Rule 4(f)(3) . . . ."); Arista Records LLC v. Media Services LLC, No. 06 Civ. 15319, 2008 WL 563470, at *1 (S.D.N.Y. Feb. 25, 2008) ("[A] plaintiff seeking relief under Rule 4(f)(3) must adequately support the request with affirmative evidence of the lack of judicial assistance by the host nation . . . ."); RSM Production Corp. v. Fridman, No. 06 Civ. 11512, 2007 WL 2295907, at *2 (S.D.N.Y. Aug. 10, 2007) ("The May Opinion held that court-directed service pursuant to Rule 4(f)(3) on defendant [] was warranted because plaintiffs had shown that they were unable to serve him in the Russian Federation pursuant to procedures set forth by the Hague Convention . . . .").

To be sure, the court in Securities & Exchange Commission v.

Anticevic, No. 05 Civ. 6991, 2009 WL 361739 (S.D.N.Y. Feb. 13, 2009), asserted that "[a] plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." Id. at *3.  This may be true in a case where no international agreement, such as the Hague Service Convention, governs service in the receiving country. See Rio Properties, Inc. v. Rio International Interlink, 284 F.3d 1007, 1015 n.4 (9th Cir. 2002) (noting that Rule 4(f)(3) provides options for alternative service when no international agreement applies), cited in Anticevic, 2009 WL 361739, at *3; Export-Import Bank of the United States v. Asia Pulp & Paper Co., No. 03 Civ. 8554, 2005 WL 1123755, at *2-5 (S.D.N.Y. May 11, 2005) (allowing alternative means of service when receiving country was "not party to any applicable treaty or agreement"), cited in Anticevic, 2009 WL 361739, at *3.  However, if the Hague Service Convention applies, its provisions are "mandatory" and "pre-empt[] inconsistent methods of service" allowed or required by state or federal statute or rule.  See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988); Rio Properties, 284 F.3d at 1015 n.4 (stating that applicability of Hague Service Convention would restrict federal court's options under Rule 4(f)(3)). Indeed, in Anticevic, the court ultimately allowed service by publication pursuant to Rule 4(f)(3) only after the plaintiff had

25

attempted service in accordance with the Hague Service Convention in two countries over a period of more than a year.  <u>Anticevic</u>, 2009 WL 361739, at *1-2 (describing plaintiff's attempt to serve in compliance with Hague Service Convention in 2006 in Germany and in 2007 in Croatia).

Because Amaprop did not attempt to serve Indiabulls pursuant to the Hague Service Convention, its request for an order allowing alternative service was premature.  Notwithstanding the Oct. 18 Order, then, the attempted service of the Subpoena and Restraining Order in India on October 14, 2011, was ineffective.[9]

C.   <u>Service of Amended Restraining Notice</u>

Amaprop requests permission to serve an Amended Restraining Notice on Indiabulls in India by commercial courier and e-mail. (Sills May 14 Letter).  Apparently, it has not attempted to utilize the Hague Service Convention procedures for service in India. Therefore, for the reasons discussed above, Amaprop's request is denied.

D.   <u>Service on Skadden</u>

Amaprop hand-delivered the Oct. 14 Subpoena and Restraining

---

[9] Because it is clear that the attempted service was improper, there is no need to address Indiabulls' argument that service in India via commercial courier is never effective because India has objected to Article 10 of the Hague Service Convention.  (Resp. Memo. at 17;  Letter of Timothy G. Nelson dated Aug. 20, 2012 ("Nelson Aug. 20 Letter"); Tr. at 50).

Notice in the 2011 Action to Indiabulls' New York attorneys at Skadden. (Sills Oct. 14 Letter at 1). It engaged a process server who attempted service on Indiabulls via Skadden of the July 18 Subpoena and Restraining Notice in the 2010 Action. (Sills July 25 Letter). Skadden's arguments regarding service of the documents from the 2011 Action indicate that it does not concede that its receipt of the Oct. 14 Subpoena and Restraining Notice effected proper service; Skadden refused to accept service of the documents in the 2010 Action on Indiabulls' behalf, asserting that it was not authorized to do so (Sills July 25 Letter). Indiabulls contends that, because under New York law, restraining notices and subpoenas (other than subpoenas requesting written answers to written questions) must be served personally in the same manner as a summons, the Hague Service Convention procedures apply to these attempts at service pursuant to Rule 4 of the Federal Rules of Civil Procedure. (Gardiner July 26 Letter; Tr. at 29).

Indiabulls is not precisely correct on either count. First, in Volkswagenwerk, the Supreme Court ruled on the applicability of the Hague Service Convention. The plaintiff at trial had served the complaint on defendant Volkswagen of America ("VWoA"), a wholly-owned subsidiary of German corporation Volkswagen Aktiengesellschaft ("VWAG"), and attempted to serve a complaint on VWAG by serving VWoA as its agent. 486 U.S. at 696-97. The state

27

trial court rejected VWAG's argument on its motion to quash that VWAG could be served only in accordance with the Hague Service Convention.  Id. at 697.  Instead, it ruled that, under Illinois law, VWoA was VWAG's agent for service as a matter of law, and that "because service was accomplished within the United States, the Hague Service Convention did not apply."  Id.  When the case was reviewed on appeal, the United States Supreme Court emphasized that the Hague Service Convention is mandatory where it is applicable, that is, in cases in which there is "occasion to transmit" a document "for service abroad."  Id. at 699-700 (internal quotation marks omitted).  The Court then held that whether a document must be served abroad is to be determined by the law of the forum.  Id. at 700-02.  If that law requires "the transmittal of documents abroad, then the Hague Service Convention applies."  Id. at 700.  However,  "[w]here service on a domestic agent is valid and complete under both [forum] law and the Due Process Clause, [the] inquiry ends and the Convention has no further implications."  Id. at 707.

As noted above, Rule 69(a)(2) allows a judgment creditor to utilize discovery devices available under both the Federal Rules of Civil Procedure and the laws of the forum state.  See, e.g., GMA Accessories, Inc. v. Electric Wonderland, Inc., No. 07 Civ. 3219, 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012) ("Rule [69(a)(2)]

has been interpreted to permit judgment creditors wide latitude in using the discovery devices provided by the Federal Rules in post-judgment proceedings.  As set out in the Rule, a judgment creditor may also utilize any discovery procedures that are authorized in the forum state, in aid of execution of the judgment." (internal quotation marks and citation omitted)).  Therefore, a judgment creditor may use the service procedures established by the Federal Rules or by state law.  <u>First City</u>, 197 F.R.D. at 256.  So, if service on Indiabulls via Skadden was proper under either federal or New York law, the Hague Service Convention does not apply.

Under New York law, a restraining notice must be served on the target "personally in the same manner as a summons."[10]  CPLR § 5222(a).  Similarly, a subpoena requiring attendance and a subpoena duces tecum, authorized under CPLR § 5224(a)(1) and (2), "shall be served in the same manner as a summons."  CPLR § 2303(a).  Under CPLR § 311(a)(1), "personal service" of a summons on a domestic or foreign corporation[11] is made by delivering the summons "to an officer, director, managing or general agent, or cashier or

---

[10] A restraining notice can also be served "by registered or certified mail, return receipt requested." CPLR 5222(a). However, for our purposes, service by mail on Indiabulls in India would be service abroad, and therefore the Hague Convention would apply.

[11] Indiabulls is a "foreign corporation" under New York law. CPLR § 105(h).

assistant cashier or to any other agent authorized by appointment
or by law to receive service."  In addition, if such service is
"impracticable," service upon the corporation may be made "in such
manner . . . as the court, upon motion without notice, directs."[12]
CPLR § 311(b).  Thus, it appears that there are two situations in
which Amaprop can avoid service abroad and the applicability of the
Hague Service Convention: (1) if it personally serves the documents
on a domestic agent authorized to receive service or (2) if service
abroad is impracticable and the court directs alternative domestic
service.  It should be obvious that the attempted service of the
documents on Indiabulls through Skadden does not fit into the
second category because Amaprop has not shown that service abroad
is impracticable, as it has not yet attempted such service.  See
Yamamoto v. Yamamoto, 43 A.D.3d 372, 373, 842 N.Y.S.2d 10, 11 (1st
Dep't 2007) ("In view of the procedures in place for effectuating
service upon defendant in Japan, and the absence of any evidence
that service in that manner is 'impracticable,' the court properly
denied plaintiff's request . . . for an order directing that
service on defendant be effectuated by personal delivery of process
upon his attorneys.").  However, if Skadden were authorized to
receive service under state law, then the delivery of the documents

---

[12] In this regard, New York law mirrors Rule 4(f)(3).

to the firm would be effective, especially in light of the fact that Indiabulls obviously has actual notice of the subpoenas and restraining orders in both cases.

But there is no need to determine the answer to this possibly thorny question, because under federal law, "[i]f a party is represented by an attorney, service . . . must be made on the attorney unless the court orders service on the party." Fed. R. Civ. P. 5(b)(1). The Federal Rules allow service to be made by "handing it to the person" authorized to receive service or by "leaving it [] at the person's office . . . ," among other methods. Fed. R. Civ. P. 5(b)(2)(A) & (B). Neither Rule 69(a)(2) nor any other federal rule has a requirement analogous to the New York rule that the permitted discovery devices must be served as though they were summonses. Thus, it has been held that "when Rule 69 discovery [including a subpoena and restraining notice] is sought from a party represented by an attorney, service may proceed . . . under Rule 5(b) of the Federal Rules of Civil Procedure." First City, 197 F.R.D. at 256.

There is no question that Indiabulls is represented by Skadden. Skadden has filed notices of appearance in both the 2010 Action (Notice of Appearance of John L. Gardiner dated April 4, 2011; Notice of Appearance of Timothy Graham Nelson dated April 4, 2011) and the 2011 Action (Notice of Appearance of John L. Gardiner

dated June 20, 2011; Notice of Appearance of Timothy Graham Nelson dated June 20, 2011).  Skadden is actively and ably representing its client in both open cases.  Skadden has not moved to withdraw in either case -- nor could it withdraw without permission of the Court.  In addition, it is clear that Indiabulls has actual notice of each of the documents at issue here.  Therefore, Indiabulls was properly served with the Oct. 14 Subpoena and Restraining Notice in the 2011 Action, and with the July 18 Subpoena and Restraining Notice in the 2010 Action when the documents were delivered to Skadden.

Conclusion

    For the reasons discussed, Amaprop Limited's Motion to Compel Indiabulls to Comply with the Subpoena Served Upon It (Case No. 11 Civ. 2001, Docket no. 83) is granted in part and denied in part. Indiabulls was properly served with a subpoena and restraining order on October 14, 2011.  Amaprop's request to serve an amended subpoena and restraining order via overnight courier and e-mail is denied.  Finally, Amaprop's request for a ruling (in Case No. 10 Civ. 1853) that the July 18, 2012 delivery to Skadden of a subpoena and restraining order was effective service is granted.  This Order decides only whether service was adequate.  It expresses no opinion on the substance of those documents.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:     New York, New York
           October 5, 2012

Copies mailed this date:

Robert L. Sills, Esq.
Richard S. Goldstein, Esq.
Katherine L. Maco, Esq.
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10017

John L. Gardiner, Esq.
Timothy G. Nelson, Esq.
Gregory A. Litt, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
42nd Floor
New York, NY 10036

33